## WILSON v. GREER.

No. 3840.  Opinion Filed May 25, 1915.

On Petition for Rehearing, August 3, 1915.

(151 Pac. 629.)

1. **INDIANS—Testamentary Capacity—Alienation of Allotment.**  A full-blood Creek Indian had the power to make a will prior to Act April 26, 1906, c. sec. 23, 34 Stat. 145; but prior to this law he had no right to alienate his allotment by a will.

2. **SAME.**  By this act Congress removed the restrictions on alienation by will of all the property of a full-blood Indian of the Five Civilized Tribes, except that no will of a full-blood Indian is valid which disinherits the wife, parent, spouse, or children of the testator, unless acknowledged as required by the act.

3. **SAME.**  Where in 1901 a full-blood Creek Indian executed a will in proper form, devising to his wife all his property, real, personal, and mixed, and all that he was entitled to as a citizen of the Creek Nation, which will was duly admitted to probate after the death of the testator in August, 1906, **held**, that the will was effective to pass all the property of the testator to the devisee.

4. **SAME—Lands—Power of Alienation.**  When the question of restriction on the alienation of lands, allotted to members of the Five Civilized Tribes, or the right or power of alienation, is involved, resort must be had to the acts of Congress relating to these matters, and to the acts of Congress alone.

5. **SAME—Testamentary Capacity.**  Where a full-blood Indian died after the passage of the act of April 26, 1906, leaving all his property to his wife, leaving no parent or children, but leaving a grandchild, who is not an enrolled Creek citizen, the proviso of such act

does not apply, and the will need not be acknowledged as required by the proviso.

6.    SAME—Law Applicable. In such case, the act of Congress above cited governs, and not the Arkansas law in regard to wills.

ON PETITION FOR REHEARING.

7.    WILLS—Construction—Time of Taking Effect. A will is ambulatory during the life of its maker. It is, in effect, reiterated as his testament at each moment of his life after its execution, including the last moment, and is governed by the law existing at the time it takes effect, which is at the time of the testator's death.

8.    SAME—Retrospective Effect of Statute. A statute passed after the making of a will, but before the death of the testator, by which the law in force when the will was made is changed, will operate on the will, and to give such interpretation to the statute does not make it retrospective, since it affects no vested rights.

(Syllabus by Devereux, C.)

*Error from District Court, McIntosh County;*
*Preslie B. Cole, Judge.*

Ejectment by Martha Wilson against B. C. Greer. Judgment for defendant, and plaintiff brings error. Affirmed, and rehearing denied.

The case was tried on an agreed statement of facts, which are, substantially: That the land in controversy (which is described) is located in McIntosh county, and was the allotment of Lotka, a full-blood Creek Indian, who was duly enrolled as such. That on the 18th day of October, 1901, Lotka made and executed a will, duly witnessed by two witnesses, one of whom was at the time of the execution of the will a United States commissioner for the Western district of the Indian Territory and the Fourth recording district, devising to his wife, Supsy Lotka, all of his property, whether real, personal, or mixed, and all that he was entitled to as a citizen of the Creek Nation, and giving her full power and authority to use, sell, and transfer the same, the same as he would

have, if living, which will was, after the death of Lotka, duly and lawfully probated, as required by law. That Lotka, the testator, died in McIntosh county some time in August, 1906, where he had resided for many years, and that at the time of his death the will had never been revoked, and was in full force and effect. That at the time of his death the only heirs at law of the testator, Lotka, were his wife, Supsy Lotka, and Martha Wilson, she being the only child of Lah-me, the son of Lotka and his wife, Supsy, but who died before his father, and that the mother of Martha Wilson was Chin-in-it, a full-blood Caddo Indian. That Martha Wilson resides on the Caddo reservation, in Caddo county, and was never enrolled on the rolls of the Creek Nation. That on September 14, 1906, Martha Wilson and her husband, Billy Wilson, conveyed the land in controversy by warranty deed to Walter T. Fears. That Supsy, the wife of Lotka, was a full-blood Creek Indian, duly enrolled, and died in McIntosh county on January 26, 1911. That on February 23, 1910, Supsy Lotka conveyed this land to Walter T. Fears by warranty deed, which was duly approved on February 23, 1910, by the judge of the county court of McIntosh county, and on December 22, 1911, this deed was duly approved by the Department of the Interior. That on February 17, 1911, Fears and his wife conveyed this land to the defendant, B. G. Greer, and that Martha Wilson (the plaintiff herein) is the only living descendant of Lotka and Supsy; Chin-in-it having died without other issue, prior to the death of Lotka.

In addition to these agreed facts, the court below found the further fact that the plaintiff, Martha Wilson, has failed to tender or offer the consideration paid her for said land, and at this time refuses to tender or offer

the consideration.   On these facts the court rendered
judgment for the defendant, and the plaintiff brings the
case here by petition in error and case-made.

*Van Court & Reubelt,* for plaintiff in error.

*Kirk B. Turner* and *Martin E. Turner,* for defend-
ant in error.

Opinion by DEVEREUX, C. (after stating the facts
as above).   On the above facts, it is seen that the de-
fendant claims title from two sources:   (1)   Under the
will of Lotka to his wife, Supsy, her deed to Fears, and
Fears' deed to him.   (2)   Under the deed from the plain-
tiff and her husband to Fears, and Fears' deed to the
defendant.

The first question, therefore, is whether a will exe-
cuted by an Indian of his allotment, at a time when he
had no power to make a deed therefor, is validated by
section 23 of the act of April 26, 1906 (34 Stat. 137, Fed-
eral Statutes Annotated, Supplement 1909, p. 200), when
the Indian dies after the passage of this act.   This ques-
tion came before this court in *Nesbit v. Gragg,* 36 Okla.
703, 706, 129 Pac. 705, 706, but was not decided; the
court saying:

"The very interesting questions of whether or not
Arthur Nesbit has rights as an heir under the special act
of the Chickasaw Nation and the facts of the case, and
whether the demise of the homestead allotment is valid,
where the will was executed before, but the testator died
after, the enactment of the law authorizing the devise,
are open ones, and no opinion is expressed."

The question thus left open, because not necessary
to the decision of *Nesbit v. Gragg, supra,* is now squarely
before us.   It cannot be doubted, in view of the great
weight of authority, that where a testator is incapaci-

tated by law from making a will, but such incapacity is afterwards removed, a will made during the incapacity must be republished after the removal of the restriction, to become a valid will. Such would be the case under our statute, if a will was made by an infant under the statutory age, and the infant should die after becoming of age. In such a case, unless there was a republication, the will would be void. Schouler on Wills (3d Ed.) section 41. But that is not the case presented here. Lotka was under no disability to make a will, and the will he did make was perfectly valid as a will; but he had no power at the time the will was executed to devise his allotment. In other words, the restriction was not on his power to make the will, but applied only to his right to pass title to this particular land by will. That he had no right to do so prior to the act of April 26, 1906, is settled. See *Hayes v. Barringer*, 7 Ind. T. 697, 104 S. W. 937, affirmed on error in 168 Fed. 221, 93 C. C. A. 507; Bledsoe, Indian Lands Laws (2d Ed.) section 60.

The question, therefore, turns upon the proper construction of section 23 of the act of April 26, 1906, which was in force at the time of Lotka's death. This statute provides:

"Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein: Provided, that no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by the judge of the United States Court for the Indian Territory, or a United States commissioner, or a judge of the county court of the State of Oklahoma."

This statute removes the disability to dispose by will of the land in question, and we think it must be construed in the same manner as if this land were after-acquired property. In the one case, the land is acquired after the execution of the will, but before death; in the other, the right to dispose of the land is acquired after the will is executed, but before death. In our opinion, the analogy between the two conditions is complete, and the same rules must govern.

Under the Wills Act of 32 Henry VIII, it was well settled that after-acquired lands did not pass, while after-acquired personal property did. In discussing the question, the Supreme Court of the United States say, in *Hardenbergh v. Ray*, 151 U. S. 112, on page 119, 14 Sup. Ct. 305, on page 306, 38 L. Ed. 93:

"In support of the first proposition, it is urged, on behalf of the plaintiff in error, that the common law, with its limitations and restrictions upon testamentary power in respect to real estate, was in force in the State of Oregon at the date of the execution of the will, and up to the death of the testator. Without reviewing the authorities, it is well settled that by the common law lands were not devisable, except in particular places where custom authorized it. This disability of the common law was partially removed by the statute of 32 Henry VIII, c. 1, which authorized persons having title to land to dispose thereof by will, and was construed as restricting the right of devising lands to such an interest only as the testator had at the time of the execution of the will. Under this statute real estate, subsequently acquired, could not pass by devise; in other words, under the statute of 32 Henry VIII the will as to lands spoke from the date of its execution. So that a general devise of all the testator's estate would comprehend and include all the personalty to which he was entitled at the time of his death, but would not embrace after-acquired land, though

such might be the expressed intention of the testator. The reason given for the distinction between real and personal estate was that a devise of land was regarded in the same light as a conveyance, and, as a conveyance at common law would not vest for want of seisin, it was therefore held to be operative only on such real estate as the testator might have at the time of the making of the will; that is to say, that a devise was in the nature of a conveyance or appointment of real estate then owned, to take effect at a future date, and could not therefore operate on future acquisitions. While this strict and arbitrary rule of the common law has been modified by the statutes of most, if not all, of the states of the Union, it is contended for the plaintiff in error that the rights of the parties in the present case are controlled by it, for the reason that the Legislature of Oregon did not confer by statute testamentary power to dispose of after-acquired real property until February, 1891."

In that case the statute of Oregon, which was taken from Missouri, provided that any person may by last will devise all of his estate, real, personal, and mixed. This statute was construed by the Supreme Court of Missouri in *Liggat v. Hart,* 23 Mo. 127, to authorize the devising of after-acquired property, and this construction was approved by the Supreme Court of the United States in *Hardenbergh v. Ray,* 151 U. S. 112, *supra,* and on page 129, 14 Sup. Ct. 305, on page 310, 38 L. Ed. 93, the court lays down the following rule:

"It may, therefore, be laid down as a general proposition that where the testator makes a general devise of his real estate, especially by residuary clause, he will be considered as meaning to dispose of such property to the full extent of his capacity, and that such a devise will carry, not only the property held by him at the execution of the will, but also real estate subsequently acquired, of which he may be seised and possessed at the date of his death, provided there is testamentary power to make such

disposition. 1 Jarman on Wills (5th Ed.) 326, and other authorities cited."

The language of the Missouri statute above set out is practically the same as that of section 23 of the act of April 26, 1906, above set out. The Missouri statute, which was held to ·pass after-acquired property, is that any person may by last will devise all of his estate, real, personal, and mixed. The language of section 23 is that every. person . of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and' personal, and .all property therein. We can see no difference in the meaning of the two statutes, and we are of opinion that the will of Lotka passed the title to the land to his devisee.

Section 32 of the act of June 25, 1910 (36 Stat. at Large, 863, c. 431; 1 Fed. Stat. Anno. Sup. 1912, p. 103), has no application to this case, because that statute only applies to cases where the Indian dies before the approval of the allotment deed, and the agreed statement of facts in this case does not give the date of the allotment deed.

It is contended by the plaintiff in error that, granting the will of Lotka to be sufficient to pass the title, yet the provisions of the Arkansas statute (Mansfield's Digest, c. 155, sec. 6500), govern, which provide:

"When any person shall make his last will and testament, and omit to name a child, if living, or the living representatives of such child born and living at the time of the execution of such will, every such person, so far as regards such child, shall be deemed to have died intestate," etc.

The argument is that as the plaintiff was the representative of Lah-me, the son of the testator, and. was

born and living at the time of the execution of the will, and was not mentioned in the will, as to her Lotka died intestate, and that the devisee took only her dower right; and the case of. *In re Brown's Estate*, 22 Okla. 216, 97 Pac. 613, is cited as in point. We do not think so. In that case, the testatrix, Julia Brown, died on November 13, 1905, and, of course, prior to the act of Congress of April 26, 1906. The only power to make a will was derived from the Arkansas statutes, and the court followed their provisions in regard to the omission of the name of a child of the testator. But in the case at bar the will derives its validity from the act of Congress of April 26, 1906, and the proviso of this statute is:

"That no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse or children of such full-blood Indian," etc.

The difference between this act and the Arkansas statute is plain. The Arkansas statute is: If the testator fails to name a child, if living, or the representative of such child born and living at the time of the execution of the will, the testator is deemed intestate as to such omitted person. The act of Congress is: That the Indian shall not disinherit his wife, parent, spouse. or children, but no mention is made of the legal representative of children, nor is there any provision, as in the Arkansas statute, that the child or representative must be named in the will. The United States has full control of Indian affairs, and any law passed by Congress in regard to the devolution of Indian land supersedes any state law on the subject. See *Collins Investment Co. v. Beard,* 46 Okla. 310, 148 Pac. 846, decided May 11, 1915. In *Proctor v. Harrison,* 34 Okla. 181, 125 Pac. 479, the will of one Tay-

lor Foley was contested by his widow; but, having been acknowledged in accordance with the proviso of the act of April 26, 1906, the will was upheld. This case does not decide the point presented in the case at bar, but we cite it as an authority that the act of April 26, 1906, was the law governing Indian wills after its enactment.

We are therefore of opinion that the will of Lotka passed to the devisee a title in fee to the lands in controversy, and that the defendant obtained the title from her. This makes it unnecessary to decide the question whether or not the deed of plaintiff required approval.

We therefore recommend that the judgment be affirmed.

By the Court: It is so ordered.

ON PETITION FOR REHEARING.

*Van Court & Reubelt* and *Ramsey, de Meules & Rosser,* for plaintiff in error.

*Turner & Turner,* for defendant in error.

*Blanton & Andrews,* amici curiae.

Opinion by DEVEREUX, C. After a careful consideration of the former opinion rendered herein, aided by the oral arguments and additional briefs filed on the petition for rehearing, we are satisfied that our former opinion was sound, and that the petition for rehearing must be denied. It cannot be seriously doubted that, at the time this will was executed, the testator had capacity to make the will, but under the laws of the United States he could not devise this particular property at that time, but as to all other property he had full power to dispose of it by will, and before his death the law was changed, so as to allow the testator to dispose of this property also by will.

In our opinion the will speaks from the death of the testator, and where he has testamentary capacity when the will was made, and it clearly appears from the will that he intended to dispose of all of his property, as in this case, the will speaks from the death of the testator, and passes all of the property that he was capable of disposing of by will at the time of his death. At the time of the testator's death the laws of Arkansas relating to wills were in force in the Indian Territory, where the testator d'ed. In *Patty v. Goolsby,* 51 Ark. 61, 9 S. W. 846, decided in 1888, it is said:

"While by the common law a will was generally construed to speak from the death of the testator as to personalty, it was not so as to real estate. For real estate to pass by will it was requisite that the testator should be seised at the time of making the will, and continue so seised to the time of his death, and it seems this rule was independent of any intention to convey such after-acquired property expressed in the will. The reason assigned was that a will was nothing more than a mode of conveying a particular estate, and the testator could not convey property of which he was not seised. * * * Considering the great changes in the policy, as well as the formalities in alienating and assuring title to real estate from what they were when the English rule on this subject originated and prevailed, we cannot see, notwithstanding the common law has never been changed by any positive statute, any reason why a will should not speak from the death of the testator as to real as well as to personal estate, and we are therefore of the opinion, and so hold, that, the said intestate being seised and possessed of the said lands at the time of his death, they were included in his will and were conveyed thereby."

In *Hamilton v. Flinn,* 21 Tex. 713, it appears that there was a law in Texas prohibiting parents from disinheriting their children without a just cause, or from dis-

posing by will of more than one-fourth of their property. This law was repealed, but prior to its repeal the testatrix executed a will practically disinheriting one of her children, and died without a republication of the will after the law was repealed. The court held the will valid, and said:

"It is conceded that if the will, in the language of the books, speaks from the death of the testatrix, it is valid, although inofficious and defective at its date. As a general rule, a will has been regarded in this state as speaking from the death of the testator. That the instrument was not only his will, but his last words, and, as such, operated, where the language of the bequest was general, upon the whole property of the testator, without regard to the senseless distinction between legacies and devises, or that the latter had been held as extending only to such lands as the testator had at the execution of the will. * * * The objection to bringing the will of Mrs. Flinn within the influence of the act of 1856 is, in substance, that this would give the act a retrospective operation, and, if so, it would conflict with the Constitution. To determine upon the soundness of this position it will be necessary to have clear ideas of the meaning of the retrospectiveness or retroactivity of a law, and this is defined with great precision and fullness in *Society for Propagation of Gospel v. Wheeler*, 2 Gall. 105 [Fed. Cas. No. 13156], by Mr. Justice Story, to the effect that a statute which takes away or impairs a vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past is to be deemed retrospective or retroactive. * * * The test, then, of retroactivity, is not whether a hope, expectancy, or a mere inchoate right, but whether a vested right 'to possess certain things according to the laws of the land,' * * * is impaired or defeated."

And it is also decided in *Loveren v. Kamprey*, 22 Foster (N. H.) 434, that a new law changing the operation

of a will is not retroactive, where the testator makes his will prior to the passage of the act, but dies thereafter. In this case it is also said:

"A will does not take effect, nor are there any rights acquired under it, until the death of the testator; and its construction is to depend upon the law as it then stands. A statute passed after the making of a will, but before the death of the testator, by which the common law is changed, will be operative upon the will. To give the statute such an effect is not to make it retrospective in its operation, since it affects no rights vested before its passage."

In *Wilson v. Wilson,* 6 Md. 487, the same question arose as in the case at bar, as to the effect of a statute passed after the will was made, and before the death of the testator. It is said:

"The sole question arising on this appeal is whether certain real estate acquired by Wm. T. Wilson after the execution of his will passed to his devisees, or descended to his heirs at law. * * * As the testator, in this case, executed his will in June, 1849, and died in June 1852, it follows that, according to the construction of the act of 1849, as established by this court, his after-acquired real estate must pass under the will, and not to the heirs at law. [*Magruder v. Carroll*] 4 Md. 335; [*Alexander v. Worthington*] 5 Md. 471."

In *Cushing v. Aylwin,* 12 Metc. (Mass.) 169, a will was executed prior to the passage of a statute allowing after-acquired lands to pass by will, and the testator died thereafter. In the opinion it is said:

"The question in this case is whether the title of Elizabeth Doane passed to the tenant by her last will and testament, or descended to her heirs at law. Her will was made prior to the Revised Statutes, and the land demanded was purchased by her afterwards. The demandants contend that Rev. Sts. c. 62, sec. 3, does not apply to

a will previously made. But we think there is no sufficient reason for this limited construction of the statute. The object of the statute was to obviate an inflexible rule of the existing law, which had been found to operate injuriously, by defeating, not infrequently, the intention of the testator, however clearly expressed; and there seems to be no good reason why the provision should not apply as well as to wills made before as to those made after the statute, when the will had not taken effect, before that time, by the death of the testator. That the Legislature had the constitutional power to enact such a law is not to be denied; and we think that such was their intention."

In *Re Kopmeier*, 113 Wis. 233, 89 N. W. 134, it is said:

"Appellant's insistence that the validity of the will must be tested by the law in force at the time of its execution is without merit. A will is ambulatory during the life of its maker. It is, in effect, reiterated as his testament at each moment of his life after its execution, including the last moment, and is governed by the law existing at the time when it takes effect, upon the testator's death. *Dodge v. Williams*, 46 Wis. 70 [1 N. W. 92, 50 N. W. 1103]; *De Peyster v. Clendening*, 8 Paige [N. Y.] 295."

The converse of the question under consideration was decided in *Johnson v. Williams*, 152 Mass. 414, 25 N. E. 611. In that case, at the date the will was executed, a married woman had the power to devise all of her property away from her husband, and the testatrix made a will so devising it; but before her death this statute was changed, so as to prevent her from alienating from her husband $5,000 worth of her real estate, if she left no children. In holding that the law in force at the time of the death of the wife, and not that at the execution of the will, governed, the court say:

"Mrs. Johnson died leaving real estate not exceeding $5,000 in value, and not leaving issue surviving her. Under the statute in force at the time of her decease, her real estate descended to her husband, and she had no power to devise it away from him. *Sears v. Sears*, 121 Mass. 269; *Burke v. Colbert*, 144 Mass. 160 [10 N. E. 753]. It is immaterial if the statute in force when she executed her will authorized her so to devise it. The statute was changed before her will took effect, and the power was taken from her, and there is no expressed or implied exception in the statute of wills executed before it took effect."

This case seems to us directly in point. In that case, at the time of the making of the will, the wife had undisputed power to dispose of all of her property. Prior to her death the law was changed restricting this right. In the case at bar the right to will this land was restricted when the will was made, but these restrictions were removed prior to the death of the testator. It seems to us that the two cases are analogous.

We have considered the second ground in the petition for rehearing, that we were in error in holding that the rule provided by the act of April 26, 1906, cited in the original opinion, supersedes the Arkansas statute in this case. We have carefully considered this question, and are satisfied with our former conclusion.

We therefore recommend that the petition for rehearing be denied.

By the Court: It is so ordered.