**BATTIEST et al. v. WOLF.**

No. 11202—Opinion Filed Feb. 12, 1924.

1. **Indians—Testamentary Capacity of Full-Bloods—Allotments.**

Prior to the act of Congress, April 26, 1906, 34 Stats. at Large, 137, full-blood Indians of the Five Civilized Tribes could make wills, but could not alienate their allotments by will.

2. **Same.**

By said act, Congress removed the restrictions on alienation of allotments by will as to full-blood Indians of the Five Civilized Tribes, except that no will of a full-blood Indian is valid which disinherits parent, wife, spouse, or children of the testator, unless acknowledged and approved as required by said act. Wilson v. Greer, 50 Okla. 387, 151 Pac. 629.

3. **Same—Probate of Will of Full-blood Indian—Effect.**

A will of a full-blood Indian may be admitted to probate in the county court, yet such probate is not conclusive upon the right of such Indian to devise real estate, and the heir upon ejectment brought to recover the land attempted to be devised, may call in question the legal effect of the will as a muniment of title, and show that it was ineffectual to pass the estate because no power to make such will has been acquired by the testator as prescribed by law. Armstrong et al. v. Letty et al., 85 Okla. 205, 209 Pac. 168.

4. **Same—Construction—"Disinheritance."**

In said act, the term "disinherits" means an act by which a person deprives his heirs who, without such act, would inherit; and the will of such full-blood Indian disinherits, within the contemplation of said act, if, without the approval required by said act, it deprives or seeks to deprive parent, wife, spouse, or children of any part of the estate in lands which they would otherwise inherit by the law of descent and succession in force upon the death of the testator. In re Byford's Will, 65 Okla. 159. 165 Pac. 194.

5. **Same— Disinheritance — How Determined.**

A full-blood Indian died, leaving no issue surviving, and no parents, but leaving his wife, to whom and to one other not related by blood he devised his allotments of real estate, such will not being approved as required under said act. On being attacked by collateral heirs, not belonging to the classes of parent, wife, spouse, or children of such Indian, on the ground that such will was not approved as provided by said act, held, that said will is valid if the value of the lands so devised to said wife be equal to or greater than the value of the lands such wife would have inherited from such Indian by the law of descent then in force: and if such value be less, then said will is invalid. such values to be determined as of the date of the death of the testator.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Murray County; F. B. Swank, Judge.

Action by Solomon Battiest et al. against Mat Wolf, in ejectment. Judgment for de-

fendant and plaintiffs bring error. Remanded, with directions.

Hatchett & Semple, for plaintiffs in error.

W. N. Lewis, D. K. Pope, and Herman S. Davis, for defendant in error.

Opinion by ESTES, C. Judgment was rendered in this case in the district court of Murray county against the plaintiffs in error, Solomon Battiest et al., plaintiffs below, and in favor of the defendant in error, Mat Wolf, defendant below, in an action by plaintiffs to recover as heirs their alleged interest in the allotment of Elijah Woods, deceased. The case was tried upon an agreed statement of facts, containing exhibits, and other record evidence. Said statement is lengthy and we do not deem it necessary to set the same out in full.

It was agreed that Elijah Woods, the allottee, whose lands are involved in this suit, was a full-blood Indian of the Choctaw Tribe; that the lands in controversy were allotted to him. His homestead allotment was 160 acres and his surplus 100 acres. His wife, Sarah Ellen Woods, was a white woman. Joined by her, he had conveyed 30 acres of his surplus to the defendant Wolf. On September 10, 1906, he made a will devising 100 acres of his homestead to his said wife, and the remainder of his real estate to his family physician, Dr. Askew. Elijah died November 1, 1906, leaving no issue surviving, and leaving no parents, but leaving his wife, the said Sarah Ellen. The plaintiffs in error are paternal nieces and nephews. The particular lands in controversy were devised by said will to said Askew. Said will was not acknowledged before nor approved by a judge of the United States Court for the Indian Territory, or a United States commissioner. It was filed for probate in the county court of Choctaw county on April 6, 1908, and on the 5th day of May, 1908, was duly admitted to probate.

Prior to the date of probating said will, one Leard et al., claiming to own said land by mesne conveyance from collateral heirs of Elijah Woods, filed a contest against said will. They set up a purported subsequent will of Elijah Woods, dated October 3, 1906, which was not approved under said act. They claimed that although such subsequent will was invalid, because not approved under said act, nevertheless that the revocatory clause in said subsequent will, revoked the will in controversy. This contest was decided adversely to such contestants in the county court, in the district court, and in the Supreme Court, reported in 28 Okla. 300, 114 Pac. 251. Also the plaintiffs in the instant case filed a contest prior to the admission of said will to probate, and thereafter themselves, dismissed same. These contests are mere side lights, and not material here.

Defendant, Wolf, predicates the title of Askew and Sarah Ellen Woods to the lands in controversy upon said will, and claims his title by a conveyance from said Askew and one from Sarah Ellen Woods, including any claims of homestead and dower. On the statement of facts the district court of Murray county rendered judgment in favor of defendant and against the plaintiffs, to reverse which the case is appealed to this court. The main issue is the validity of the will.

1. It is contended by plaintiffs in error that the will was void for the reason that the same violates section 23 of the act of Congress of April 26, 1906, as follows, to wit:

"Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein; provided, that no will of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States commissioner."

The validity of said will depends upon whether or not said Sarah Ellen Woods was disinherited by said will within the meaning of said congressional act. We can follow, somewhat, the very able briefs of both sides in discussing this case.

Said act of Congress contains two parts: It contains a general enactment applicable to all Indians belonging to the Five Civilized Tribes. It contains a proviso which enumerates certain conditions and formalities that must be observed when a full-blood Indian seeks or attempts to disinherit certain heirs named and specified in the act. If there is no attempt to disinherit any of the persons named and specified in the act, then there is nothing that distinguishes a last will and testament of a full-blood Indian from the last will and testament of any other person. A full-blood Indian under said act is just as competent to make a devise of his estate by last will and testament as any other citizen of Oklahoma. He may, if he so desire, disinherit any or all of his heirs, insofar as the act of Congress is concerned, provided that, if he desires to disinherit parent, wife, spouse, or children all

or any one of said classes so specified, his last will and testament, in order to operate as a conveyance of real estate, must have the approval of one of the officers named in the act. When this condition has been met, his last will and testament becomes a valid devise of real estate.

It will be observed that there are four classes of persons which the act of Congress seeks to protect, to wit: parent, wife, spouse, or children. So long as no one of the specified classes has been discriminated against or been deprived of any part of an estate that he would receive by virtue of the law of descent, no violence has been done to the above act of Congress. The members of the Five Civilized Tribes, prior to the date of said act, could make wills, but prior to the said act they had no right to alienate their allotments by will.

2. Counsel for both sides contend that Armstrong v. Letty, 85 Okla. 205, 209 Pac. 168, is controlling in the instant case. That was an action wherein John Letty sought to recover certain real estate devised to one Barnacher by Carry Letty. John Letty based his right to recover upon the fact that he was the father of Carry Letty, and, therefore, any last will and testament which had for its purpose and object the violation of the act of Congress heretofore set out, was invalid and wholly inoperative as against him, unless the specified formalities had been observed in the execution of the last will and testament. The specified formalities had been omitted and the plaintiff, John Letty, was one of the persons named in the act of Congress whom the testator could not disinherit unless the devise was approved by an officer designated in the statute. Thus, it is seen, that the facts of that case are very different from these in the instant case. These plaintiffs, being collateral heirs, did not come within the classes specified in the act of Congress, with respect to whom said formalities of approval, under said act of Congress, must be made in order to disinherit them. In other words, Elijah Woods could disinherit these nieces and nephews without any approval under said congressional act, in like manner as any other citizen of Oklahoma might disinherit such collateral relatives. Therefore, Armstrong v. Letty, supra, is not an authority for the plaintiffs in this case, that the said will is invalid. On the other hand, the principle referred to in said case is consonant with the theory of the defendant.

Syllabus 2 of Wilson v. Greer, 50 Okla. 387, 151 Pac. 629, referring to said act of Congress, is:

"By this act, Congress removed the restrictions on alienation by will of all the property of a full-blood Indian of the Five Civilized Tribes, except that no will of a full-blood Indian is valid which disinherits the wife, parent, spouse, or children of the testator, unless acknowledged as required by the act."

In that case, a full-blood Creek Indian devised all his real estate to his wife to the exclusion of his grandchild and his will was not approved as required by said act, or the amendment thereto. The court held, in effect, that the will was valid on ejectment brought by the grandchild and did not offend against said act because the grandchild did not belong to one of these classes mentioned in said act with respect to whose rights such approval must be had. This case, in principle, is very similar to, if not identical with, the case at bar. Sarah Ellen Woods was the only person in being with relation to Elijah Woods, who came within any of the classes mentioned in said act; and unless Elijah Woods disinherited her, then the will in controversy is valid, under the decisions of this court.

3. Armstrong v. Letty, supra, has to do, mainly, with jurisdiction in such cases. That the issue in the probate of a will is the factum of the will or the question of devisavit vel non, is, of course, not a question decided in that case nor that the court, on a hearing to admit to probate, has not the jurisdiction to construe or determine the effect of a will pertaining to real estate. In the second division of the syllabus of In re Byford's Will, 65 Okla. 159, 165 Pac. 194, it is held that the due execution and attestation of such a will involves the question of whether or not such will was approved under said act of Congress. In the first paragraph of the syllabus of Armstrong v. Letty, supra, it is said, in substance, that the approval and acknowledgement of a will of a full-blood Indian under said act, is not an element of the execution and attestation contemplated by our statute, and is not within the purview of the jurisdiction of the county court in admitting a will to probate. See, also, the seventh paragraph of the syllabus. Wherefore, it is apparent that the Armstrong Case, in part, overrules the Byford Case. The Armstrong Case does further secure the right of the plaintiffs herein to test their rights by ejectment in the district court, because the decree of the county court is no estoppel and such approval under said act is not within the purview of the jurisdiction of such county court. If the will be invalid, plaintiffs are heirs at law of Elijah Woods. We take it that they have as much right to

test the validity of this will as any other person who would be an heir at law had said Elijah Woods died intestate. The Armstrong Case is authority for the proposition that although the will was admitted to probate, yet such probate is not conclusive upon the right of said Elijah to devise this real estate as held, and plaintiffs may call in question the legal effect of the will as a muniment of title, and show, if they can, that the will was ineffectual to pass the estate to Askew. Therefore, the claim of defendant that these plaintiffs, because they do not belong to any of the classes named in said act, cannot question the validity of this will, is not tenable.

4. Bouvier's Law Dictionary defines "disinherit"; "An act by which a person deprives his heirs who, without such act, would inherit." "Dishersion" is defined to be: "Disinheriting, depriving or being out of an inheritance." In re Byford's Will, supra. If the said will of Elijah Woods seeks to deprive, or does deprive, Sarah Ellen Woods as an heir at law of any part of the estate in lands which she would otherwise inherit by this law of descent and succession in effect at the death of said Elijah Woods, then such will does disinherit her within the contemplation of such act, she being of the classes protected from disinheritance, except by approval under said act. In re Byford's Will, supra. "Disinherit", as used in said act, means deprivation in toto or of any part of property to which said Sarah Ellen Woods would succeed, had said Elijah Woods died intestate. If said Elijah Woods, by will in this case, could reduce the value of her property by a moiety, ever so small, as compared with her intestate share, and not disinherit her, then he could, by will, reduce her moiety to a nominal portion or a mere pittance, as compared with her intestate share, and still not disinherit her. As the great John Marshall, in McCullough v. Maryland, said, the power to tax involves the power to destroy; likewise here, the power, to reduce the moiety, once granted, the act of congress would become a practical nullity and its evident purpose defeated.

It is contended by plaintiffs in error that Congress intended by the passage of said act to prohibit said Elijah Woods from making a will without such approval which takes away from his surviving wife the property she would inherit under the law without a will, or change the estate from the regular channel it would follow under the law of inheritance. In short, it is contended that any such will, without such approval, is invalid under said act if it changes in kind the estate which said Sarah Ellen would take under the law. This could mean only that the will of said Elijah is invalid unless it gives to said Sarah Ellen a dower interest or life use of a part of said lands, under the Arkansas statutes in force in 1906. By way of argumentum ab inconvenienti, and in arriving at the intention of Congress to determine the proper construction of said act, we make the following observations: If the will in controversy gave to Sarah Ellen a dower interest under the Arkansas law, she would then take under the law and not by the will, and if this be required by said act in this case, then it would amount to a partial denial of the right of said Elijah to make a will at all. With the said approval, he could disinherit her, but without such approval, he could not give her all or any portion of his estate greater in value than her dower interest. Suppose by his will Elijah had given Sarah Ellen all his property or ninety-nine per cent. of it in value, could it be said under this act that he disinherited her? Moreover, if the will in controversy in fact gives to said Sarah Ellen more in value than she would have taken had said Elijah died intestate, can collateral heirs be heard in court to say that she was disinherited thereby, because she took part of the estate thereby which they would have received except for such will? The approval required being for her protection, and not for that of plaintiffs in error, can they, if she received too much under the will, be heard to invoke the act to protect her by showing she received too much and a part of what they would receive except for the will? Such contention that said Sarah Ellen was disinherited by a will, under which she received more in value than she would receive had there been no will, involves an absurdity. Moreover, said Sarah Ellen has long since disposed of her interest in the state of said Elijah, which she received under the will, and ratified its every provision, and is not here complaining. It is not claimed that she was incompetent to transact business and it should be presumed that she acted for her own best interest. The Arkansas statutes required her to elect within 18 months whether she would take under this will, and for her failure to renounce said will, she is conclusively presumed to have elected to take under the same. In determining the contemplation of Congress, should the act be so construed as to deny her the freedom, if not the right to take that which, to her, was more valuable, if her share under the will be greater in value than her intestate share would have been?

5. By every canon of reason and of justice and by the standards of American jurisprudence for measuring the rights of men, value is the only yardstick, ordinarily and in a case like this, by which courts may be governed. It must be determined as a matter of fact and not of law, whether Sarah Ellen Woods, by said will, received at least as much of the property of said Elijah Woods, as she would have received had he died intestate. On this point, there is a dispute in the briefs. We do not think this question can be determined by a comparison of the acreage of land which said Sarah Ellen Woods received under the will, with the acreage she would have received had there been no will. We are limited to the statement of facts on which the case was tried. The data therein is insufficient for this purpose, and the case is remanded to the trial court for further proceedings in accordance with these views, to determine whether the value of the estate devolving upon Sarah Ellen Woods, under said will, was at least as great as the value of the estate which would have devolved upon her, had Elijah Woods died intestate, and this as of the date of the death of said Elijah Woods. If said value under said will be as great or greater than the value of her intestate estate, then the will is valid, and the judgment of the trial court should be affirmed, and if otherwise, the judgment should be reversed.

By the Court: It is so ordered.