This is an appeal from a judgment and decree denying probate of a will made by Winnie Sixkiller, a full-blood Cherokee Indian. The will was signed October 28, 1926. At that time testator was about 88 years of age. She could neither read nor write, and could not speak the English language. At the time the will was signed she had four daughters living, namely, Mary Muskrat, Elizabeth Padgett, Ora Watt, and Nannie Hogner; one son, Taylor Sixkiller, had died leaving an only child, Josie Swimmer.
One of the daughters, Ora Watt, had been married to a man named William Hogner, and by him had borne five children, Ellen Hogner, Sam Hogner, Lula Hogner, Emma Hogner, and Mary Hogner, plaintiffs in error herein. Their father had died, and after his death their mother, Ora, had gone with her children to live with her mother, Winnie Sixkiller. Ellen was then about ten years of age. The youngest child, Mary, was born after her father's death. Thereafter Ora remarried and moved away from her mother's home, but her children continued to live with their grandmother, and she provided and cared for them as though they were her own children. They made their home with her until the date the will in question was executed. Ellen married one Charles Worley before the grandmother died. The others lived with the grandmother until her death. Jonas Sixkiller, the husband of Winnie, had died leaving his allotment to his heirs, including Winnie. The will appears to have been signed and attested with all the formalities prescribed by law. The will provided:
"I give to my daughters, Mary Muskrat, Eliza Padget, Ora Watt, and Nannie Hogner, all my interest in and to the land formerly owned by and allotted to my deceased husband, John or Jonas Sixkiller, located in section 8 and 9, township 16 north, range 25 east, in Adair county, Okla., they to have same jointly in equal shares.
"All the rest, residue, and remainder of my property, both real and personal and mixed, whatsoever kind and character, and wheresoever located, including all my real estate other than said John Sixkiller allotment owned by me at my death, and including all money, credits, effects, and personal property of every kind and description, belonging to me at my death, wheresoever located or in whosoever custody or control, I give to my grandchildren, Ellen Hogner, Sam Hogner, Lula Hogner, Emma Hogner, and Mary Hogner, in equal shares.
"I appoint and designate my granddaughter, Ellen Hogner, executrix, of this my last will and testament."
The grandchild Josie Swimmer was not named in the will. After the will had been prepared, signed by testator, and signed by the attesting witnesses, application for the approval thereof was made to the county judge of Adair county, that being the county of the residence of the testator. The will was approved by the county judge by an order entered of record as follows:
"On this 28th day of October, 1926, the above petition of Winnie Sixkiller for the approval of her will being presented to the undersigned, county judge of Adair county, Okla., and it appearing that the testatrix, Winnie Sixkiller, at the time of making said will was of sound mind and memory, of legal age, and qualified and capable in all respects to make a will; that said will was made and executed by her of her own free will, free from menace, fraud, duress, or undue influence of any kind, and that the terms thereof are just and fair, and same should be approved.
"It is hereby ordered that said will be and the same is hereby approved.
"W.A. Scofield,
"County Judge."
After the death of Winnie, the granddaughter Ellen Worley filed her petition for the probate of said will. Josie Swimmer filed a contest, alleging, in substance, that at the time of the making of the will Winnie Sixkiller was mentally incompetent to make a will; that she was under undue influence, menace, and duress exerted by the chief beneficiaries in the will in that they had frequently threatened her, and had threatened to do violence to themselves unless she made a will making them the chief *Page 304 
beneficiaries; that they falsely represented to her the effect and contents of the will, and said will did not properly and truly express the wishes and desires of the said Winnie Sixkiller as to the disposition of her property; that the will was not executed and attested as by law required; that decedent could not speak or understand the English language, and those who interpreted the will to her from the English to the Cherokee language did not properly and truly interpret it, and that the purported will failed and omitted to provide for said Josie Swimmer, who is the lawful issue of Taylor Sixkiller, a deceased child of decedent, and that said failure does not appear from the will to be intentional.
Ora Watt, Mary Muskrat, and Eliza Padgett filed separate contests, alleging, in substance, the same grounds, except the omission from the will of the grandchild Josie Swimmer.
Hearing was had before the county court, where probate of the will was denied. Proponent appealed to the district court, where hearing de novo was had, and probate of the will was there denied, and proponent prosecutes this appeal.
The trial court found that the will as proffered includes the formalities in general as required by law, but that said will was not made, executed, and approved in the manner required by law; that said Winnie Sixkiller was under duress, menace, fraud, and undue influence at the time of the alleged execution of the instrument; that she was not at that time of sound and disposing mind and memory, and was not then possessed of testamentary capacity.
Errors alleged are that the court erred in refusing to admit the will to probate, and that the judgment is contrary to and not supported by the evidence.
The findings of the court that the will includes the formalities in general as required by law is correct, but there is no evidence whatever to sustain the finding that the will was not approved in the manner provided by law. It was presented to the county judge, who made such examination and inquiry as he deemed necessary, and he approved the will by the order above quoted.
If the will required the approval of the county court, the order approving same was sufficient.
As to undue influence, the court, at the close of the evidence, stated that he did not believe the testimony sufficient to show any undue influence, although he thereafter found that there was undue influence. There is not the slightest evidence of either menace, duress, or undue influence. There is, therefore, no evidence whatever to sustain the finding in the journal entry to the effect "that the testator was under duress, menace * * * and undue influence."
Considering the evidence as to testamentary capacity at and before the time the will was made, it may be said that the finding of the trial court to the effect that testator did not have testamentary capacity is at least contrary to and against the clear weight of the evidence. The evidence of proponents shows that the will was drawn by W.H. Martin, an attorney of Stilwell, Okla.; that on the 28th day of October, 1929, Winnie Sixkiller, accompanied by her granddaughter, Ellen Hogner, now Ellen Worley, went to the office of Mr. Martin. Martin did not speak the Cherokee language, and Winnie Sixkiller could not speak English. The granddaughter interpreted for them to the extent that Winnie Sixkiller informed Mr. Martin that she wanted him to prepare a will for her. Shortly thereafter one William French, who could speak both English and Cherokee, came into the office and stated that he had been requested by Charles Worley to come to the office and act as interpreter. The will was then prepared by Mr. Martin, Mr. French acting as interpreter. Winnie Sixkiller herself, without any suggestions from any other person, stated to Mr. Martin through the interpreter just how she wanted to dispose of her property. She told him she desired to give whatever interest she had in the allotment of her deceased husband to her daughters and gave him their names. She did not know the legal description of the land, but Mr. Martin testified himself that he knew the township and range where the allotment was located, and referred to a plat and from the plat inserted the section number. Winnie then told Mr. Martin that she wanted to give all the balance of her property to her grandchildren, and gave him their names, and this was done without any suggestion whatever from any other person.
Before the will was finally signed one Sam Adair, who also could speak both English and Cherokee, came into the office. French and Adair signed the will as witnesses. Mr. Martin, Mr. French, and Mr. Adair testified that there was nothing whatever done or said to indicate that Winnie Sixkiller did not then know and fully understand what she was doing, the nature *Page 305 
and extent of her property, and the effect of the will; that she was apparently in normal condition of mind and body. True, the evidence shows that she was well advanced in years, and had never had the benefit of an education, but all the witnesses testify, in substance, that she had always attended to her own business affairs; had attended to the duties of renting and managing her land, and the sale of stock, etc. Her memory was perhaps somewhat impaired, but not more than most persons of her age. The evidence as a whole shows that she was capable of attending to her business affairs as well as or better than the average person of her age and educational advantages. She appears to have fully understood the source of the title of her deceased husband's allotment and the manner in which she acquired her interest therein. After the will was prepared and approved she declined in health and strength and somewhat in mental capacity. Most of the evidence tending to show lack of testamentary capacity was concerning things and transactions which took place long after the will was executed and shortly before her death.
Advanced age of itself is no reason whatever for saying that a person has not testamentary capacity. Generally it may be said that a person has testamentary capacity when he has his full and intelligent consciousness of the nature and effect of the act in which he is engaged; a knowledge of the property possessed and an understanding of the disposition he wishes to make of it by will, and of the persons and objects he desires to participate in his bounty. 28 R. C. L. 86; 40 Cyc. 1004. Measured by this rule, testator appears to have come clearly within the requirement. She apparently clearly understood the effect of her will as to the part of the property that had come to her from her deceased husband, and that she was giving it to the children of her deceased husband. As to her own allotment and other property, and the persons she desired to have it, there appears a good reason for her actions. Her own children had long before married and established homes for themselves and probably had allotments of their own. The grandchildren she selected as her beneficiaries were those she had taken into her own home when they were very young. She had cared for them and reared them as her own children. They had been with her as members of her own family for many years, and naturally she had become attached to them. They had doubtless taken the place of her own children in her home, her heart, and her affection. There is nothing whatever unnatural in her selecting these grandchildren as beneficiaries. Bearing in mind that there is not the slightest evidence in the record that any person suggested to her how she should dispose of her property, certainly she must have known and understood the nature and effect of the act in which she was engaged when she made the will. It is true that in selecting the grandchildren whom she desired to have her property she named only those who had lived with her and failed to name one grandchild. Josie Swimmer, and made no provision whatever for her. The record shows that the father of Josie had died many years before and she had gone to live with her mother in another county. None of the daughters of Winnie Sixkiller appear to have known anything about this grandchild, whether she was living or dead. None of them had heard from her for many years before the death of Winnie Sixkiller.
Much had been said in the briefs as to who has the burden of showing testamentary capacity. It is generally held that the burden of proving the due execution and attestation of a will is upon the proponents. If there be protest against its admission to probate, the burden is still upon the proponent to prove due execution and attestation of the will, which may include proof of testamentary capacity. But where a will has once been admitted to probate, and contest is thereafter instituted, the burden is upon the contestant to establish his grounds of contest. 28 R. C. L. 398.
In this case the proponents have sustained the burden of proof of testamentary capacity. As a whole, the great weight of the evidence is in their favor.
The finding as to fraud remains to be considered. As stated before, one William French was called in to act as interpreter between testator and Mr. Martin when the will was being prepared. He testified as a witness in substance that he correctly translated or interpreted the instructions given by Winnie to Mr. Martin while the will was being prepared, and that after the will had been reduced to writing, and in the form in which it was signed and attested, he undertook to read the will to Winnie; that is, translated into the Cheokee language for her; that he did so correctly down to where it provided "I give to my granchildren" (naming them); that he omitted the names of the grandchildren as contained in the will. That about that *Page 306 
time Ellen Hogner interrupted him and stated he was not reading the will correctly. He did not testify in what particular she charged that he was not translating correctly. But Mr. Adair, the other attesting witness, who also understood both languages, corroborates him to the extent that the names of the particular grandchildren mentioned in the will were not read to Winnie Sixkiller by Mr. French. This appears to be the only matter tending to show fraud. French testified that when Ellen Hogner accused him of not reading the will correctly she took it out of his hand and refused to permit him to read the will further. All the other witnesses who were present deny this latter part. The will was then and there signed by Winnie Sixkiller, that is, she placed her mark thereon and French certified that he signed her name to the instrument at her request and in her presence and that he then signed as an attesting witness. Thereafter the will was taken by the attorney, accompanied by Winnie Sixkiller, Ellen Hogner, and Sam Adair, and presented to the county judge with a written application for approval. French did not go along, but Sam Adair acted as interpreter with the county judge. The written application was also signed by Winnie Sixkiller by mark, and both William French and Sam Adair signed as witnesses. This clearly refutes the testimony of William French to the effect that he was told that his services were no longer needed after he read the will leaving out the names of the grandchildren.
Stress is laid upon this evidence as tending to show fraud practiced upon the testator in not disclosing to her that one of her grandchildren, Josie Swimmer, was not named in the will as beneficiary. We fail to see where there is fraud shown in this connection. The only thing complained of is that French did not read the names of the grandchildren named in the will. The inference is sought to be drawn from his act coupled with that of Ellen Hogner that had the names of the grandchildren been read, she would have known that Josie Swimmer was not named as one of the grandchildren or one of the beneficiaries. The act of Ellen Hogner in calling attention to the fact that the will was not being read correctly was that she herself was calling attention to the omission mentioned. Certainly this could not be fraud on her part. If anything, it was calling attention more particularly to the omission, and the failure of French to read the names of the grandchildren. Therefore, had the names been read, it would have been done at the instance of the very party who is in substance charged with the fraud. Her efforts in this particular were not to conceal from the testator anything that was contained in the will, but were rather to reveal what the interpreter had omitted reading in the will.
The evidence is uncontradicted that French correctly interpreted the directions of the testator to Mr. Martin as to what testator desired to have in the will, and that the will when written correctly reflected testator's directions.
There is, therefore, no evidence whatever to sustain the findings of fraud.
The fact that the grandchild Josie Swimmer was not named or provided for does not invalidate the will under the Act of Congress of April 26, 1906, as amended by the Act of May 27, 1908, relating to the power of full-blood Indians of the Five Civilized Tribes to devise real estate.
There was no attempt to disinherit a parent, spouse, or child. Grandchildren are not mentioned in said act, so there is nothing to distinguish the will in question from the last will and testament of any other person, so far as the act of Congress is concerned. Battiest v. Wolf, 97 Okla. 215,223 P. 661; Garrett Co. v. Collins, 103 Okla. 153, 229 P. 569.
Where grandchildren only are not provided for, the will need not be acknowledged or approved as provided in said act. Wilson v. Greer, 50 Okla. 387, 151 P. 629.
We determine herein only the sufficiency of the will.
The judgment is reversed and the cause remanded for further proceedings consistent herewith.
CULLISON, V. C. J., and ANDREWS, OSBORN, and BUSBY, JJ., concur.