JONES et al. v. DENTON, Ex'r, et al.

No. 30845. Dec. 22, 1942.

Rehearing Denied Feb. 2, 1943.

Application for Leave to File Second Petition for Rehearing Denied March 23, 1943.

135 P. 2d 53.

James W. Rodgers and Pryor & Wilbanks, all of Holdenville, for plaintiffs in error.

Forrester Brewster, Earl G. Anthis, R. M. Mountcastle, and W. J. Crump, all of Muskogee, Milam King, of Checotah, and E. C. Hopper, Jr., of Eufaula, for defendants in error.

BAYLESS, J. This appeal from the district court of McIntosh county, where the matter was heard de novo on appeal from the county court, involves a contest over the validity of the will of Mollie Jones, deceased. Decedent left an instrument that was duly admitted to probate as her last will and testament, but before a year expired certain heirs at law, also legatees, instituted a contest. Decisions adverse to them and sustaining the validity of the will were rendered in each of the courts below, and contestants appeal.

There is a voluminous record of evidence consisting of the testimony of many witnesses for both parties. We

see no occasion to outline all of the evidence, and will limit our reference thereto to the portions thereof relating to the propositions raised and discussed.

In the reply brief contestants raise an issue about the correctness of the court's ruling on the burden of proof. After listening to argument, the trial court ruled that since this was a contest after the probate of a will, 58 O. S. 1941 § 61, the burden was on contestants to establish its invalidity according to the allegations of their pleading. We observe that contestants saved their record on this ruling, and have a general assignment of error in the petition in error respecting errors of law occurring at the trial, but in their brief they did not mention this issue. By raising it in their reply brief, it comes too late for answer by their opponents. We do not think the cases cited by contestants are applicable. While the rule is that one offering a will for probate always has the burden of establishing the will, this rule does not apply to contests on wills after probate. In 68 C. J. 995 § 760, it is said that this burden is lifted from the proponent of a will where, in proceedings to set aside the order of probate, the contestant alleges the will has theretofore been admitted to probate, and the will and order admitting to probate makes a prima facie case for the proponent and the burden is then shifted to the contestant. Contestants alleged in their pleadings that the will had been admitted. In the case of In re Blackfeather, 54 Okla. 1, 153 P. 839, it was pointed out that the nature of the attack on the order admitting the will to probate did not entitle contestant to a trial de novo, and again it was stated, in discussing the evidence and weight thereof, "While the burden of proof was upon the contestants, yet" the contestee had successfully met the attack. See, also, In re Baird's Estate, 176 Cal. 381, 168 P. 560, and other cases in the footnotes to C. J., supra. Therefore, the trial court ruled correctly with respect to the burden of proof.

It is first contended by contestants that the trial court erred in refusing to admit in evidence the testimony of certain lay witnesses relating to the testamentary capacity of decedent. We do not observe any difference between the parties in their views of the law on this issue. In all of the authorities cited it is said the question resolves itself to the point where a large degree of discretion is vested in the trial judge in determining whether a witness has qualified under the rule. The reason back of this is that the matter is tried according to equity, and the trial judge ought not to be required to receive the conclusion of a lay witness on the point when the trial judge would realize that little, if any, weight or value could be accorded such a conclusion. We have read the testimony of these witnesses, and we feel that it was properly excluded. These witnesses generally had known decedent for many years, but in each instance they so hedged their opinions or qualified them, or based them on such trivial matters that could have no bearing on testamentary capacity, that a conclusion based thereon would have been of no probative value. One witness had known her for years, and said: ". . . I never paid much attention to her, only knew her." Another, a merchant, thought she could not count money in English, and saw no change in her manner of dress after she became wealthy. Another doubted her ability to count her pocket money. Another witness, a merchant, said she was interested in buying knick-knacks and only the cheapest of things, and said if she did not recall buying an article she would not pay for it. These instances are illustrative of the witnesses whose opinions were sought, and are representative of the testimony rejected and about the rejection of which complaint is made. We are of the opinion such testimony formed no basis for an admissible conclusion.

The next contention relates to the admission in evidence, over the objection of contestants, of certain exhibits.

Such exhibits as decedent's earlier will and the will under consideration, and certain records in the probate pro-

ceedings, were clearly admissible, and complaint thereof is without merit.

Several of these exhibits clearly are subject to the objection offered, since they are clearly hearsay and represent only what some person heard an interpreter say that decedent said thus. However, this matter was heard by the trial judge and it clearly appears he knew and understood the limitations of such exhibits, and we are convinced that no prejudice resulted to contestants from the admission thereof. This situation differs from that in many of the cases cited where a jury was impaneled. In consideration of what we have said, we are unwilling to hold that prejudice resulted that necessitates a reversal.

The last contention is that the judgment of the trial court is contrary to the law and the evidence, and is against the clear weight of the evidence. This general proposition is divided into several divisions.

We have considered the briefs of the parties, and have read the evidence introduced on the issues of mental capacity, undue influence, the details of the execution of the will, and the competency of the subscribing witnesses. As stated, this matter is one equitable in nature and on appeal we are bound to review and weigh the evidence. The evidence is conflicting. It relates to a testator shown to have been an aged, illiterate, full-blood Creek Indian woman, who was unable to speak the English language beyond a few common phrases, but who seemed able to comprehend simple matters stated to her in simple English. It is apparent from the evidence that she knew that she was the possessor of money and that she realized that her money exceeded in a substantial manner that of her kinsmen and neighbors. At the same time the evidence discloses that she could not count, and it was doubtful whether she could state in an intelligible way the extent of her money. With respect to the testimony about her habits of life, and her tendency to purchase small items at small prices, and her knowledge of what she desired and did not desire to purchase, and her reticence in the presence of strangers, and her unwillingness to associate with white people, we think the conclusion of contestants that lack of testamentary capacity is shown thereby is without merit.

Debate may be indulged over the presence or lack of testamentary capacity (84 O. S. 1941 § 41) and the intelligible, reasonably substantial acknowledgment and compliance with the formalities attendant upon the execution of a will (84 O. S. 1941 § 55) when the testator is a person shown to be a little familiar with the laws of this state on the general subject.

However, this is a subject that is not without previous consideration by the courts of this state. In re Blackfeather's Estate, 54 Okla. 1, 153 P. 839; In re Nitey's Estate, 175 Okla. 389, 53 P. 2d 215; In re Sixkiller, 168 Okla. 302, 32 P. 2d 936; In re Wah-kon-tah-he-umpah's Estate, 108 Okla. 1, 232 P. 46, and other cases under 84 O. S. 1941 § 41 and notes. These several cases include wills made by Indians who in their lifetime had not wholly dropped the mode of life of their fathers, and had not adopted to an appreciable degree the white man's way of life, and yet were held to possess testamentary capacity. Testamentary capacity has been described by this court in Re Nitey's Estate, supra, as being a state of mental capacity to understand in a general way the nature of the business then ensuing, to be able to bear in mind in a general way the nature and situation of the property, to remember the objects of her bounty, and to plan or understand the scheme of distribution.

Considering the evidence before us, we are unable to say that the judgment of the trial court on this issue is clearly against the weight of the evidence.

The evidence with respect to what transpired at the time of the execution of the will is in conflict, and we are likewise unwilling to say that the judgment of the trial court is clearly against the weight of the evidence.

The judgment of the district court is entitled to stand unless this court can say that it is clearly against the weight of the evidence. As pointed out above, we do not think it is clearly against the weight of the evidence.

The judgment is affirmed.

WELCH, C.J., and OSBORN, GIBSON, HURST, and DAVISON, JJ., concur. CORN, V.C.J., and RILEY and ARNOLD, JJ., absent.