In re HARJO'S ESTATE.

COKER et al. v. BROWN et al.

No. 34812. Feb. 26, 1952.

241 P. 2d 373.

James W. Rodgers and James W. Rodgers, Jr., Holdenville, for plaintiffs in error.

T. H. Williams, Jr., and Tom Smith, Wewoka, for defendants in error.

BINGAMAN, J. Nancy Harjo, a three-quarter blood citizen of the Seminole Nation, died on April 30, 1949. She left a last will and testament, dated March 17, 1947, which was probated in the county court of Seminole county, and the executor therein named was appointed. After the will had been admitted to probate a contest against it was filed by Ober Coker and others, citizens of the Creek Nation. The contest was decided adversely to the contestants and they appealed to the district court whose judgment was likewise adverse to them. Contestants appeal.

The grounds of the contest were that at the time of the making of the will Nancy Harjo was mentally incompetent to make a will; that the will was the result of undue influence, fraud and duress practiced by the beneficiaries upon Nancy Harjo; that the will was not executed and attested as required by law, and was not translated and explained to the testatrix in the Seminole language. Contestants further alleged that they were next of kin of Nancy Harjo; that they lived in Okfuskee county and had no knowledge of the offering of the will for probate until after the order admitting it had been made.

In this court as their first two contentions contestants allege the refusal of the trial court to admit and consider the opinion testimony of their witnesses as to the mental incapacity of Nancy Harjo, and that the trial court committed prejudicial error in admitting the testimony of Joe Looney, United States Commissioner, who approved the will. We have carefully examined the record; read the testimony of all the witnesses and find therefrom that in no case did the trial court refuse to permit any witness, either for the contestants or the proponents of the will, to express his or her opinion as to the mental competency of Nancy Harjo. Whether he considered this evidence will be discussed in a subsequent paragraph.

Defendant contends that the trial court erred in permitting Joe Looney, United States Commissioner, who approved the will, to testify as to the competency of Nancy Harjo, since he made the inquiries upon which he based his conclusion that she was competent through an unsworn interpreter, and that since Looney did not understand the Seminole language, and gained all his information through the interpreter, he should not have been permitted to testify. Examination of the record, however, discloses that no objection was made to Mr. Looney's testimony on this ground or in fact on any other ground, except that he had not known the testatrix for a sufficient length of time to qualify him to testify as to her mental competency, and a further objection when he testified that she was not, in his opinion, unduly influ-

enced or under duress at the time she signed the will. We think both of these contentions are without merit.

The third contention of the contestants, namely, that the judgment of the trial court was contrary to the law and the evidence and clearly against the weight of the evidence, presents what we consider the decisive question in this case. At the opening of the trial the executor introduced the testimony of three of the subscribing witnesses to the will, two of whom were familiar with both the English and Seminole languages, and qualified to act as interpreters. Each had a copy of the will and while one interpreted the other checked the interpretation to be sure that the will was correctly interpreted to Nancy. One of these witnesses was a member of the Seminole Tribal Council. The witness who interpreted the will testified that he correctly interpreted it; that Nancy thoroughly understood it and that in answer to questions propounded to her by her attorney she stated that it correctly reflected her desires. The other testified to the same effect, stating that when the attorney asked her if she understood the will she said she did; that the attorney then asked her what it was and that she replied:

"I am trying to give what I had to these parties," meaning the beneficiaries Dave Brown, Fanny Brown and Rosey Alexander; that upon being asked why she was going to give some of it to Rosey Alexander, she said:

"Well to give it to her my part because I have been staying with her at least more than ten years."

That she then stated that it was her last will and testament, requested one of the witnesses to sign her name and the others to witness the execution of the will.

Mr. Looney, who was called to acknowledge the execution of the will as United States Commissioner, testified that when he discovered she was under guardianship as incompetent to manage her property, he questioned her at length in order to ascertain her then condition; that from her answers he learned that Dave Brown and Fanny Brown, two of the beneficiaries, were the closest kin that she thought she had, and that she bequeathed a part of her estate to Rosey Alexander because she had been living with her and Rosey had been looking after her for years. He testified that after questioning her at length he came to the conclusion that the will was her free and voluntary act and deed, and that she understood what she was doing at the time she signed the will.

At the conclusion of this evidence contestants introduced the testimony of eight or nine lay witnesses who had known Nancy since her early childhood. These, without exception, testified that she was not mentally competent at any time during her life; that she had the intellect of a small child, and talked and acted like one. But examination of their testimony discloses that in most cases the witnesses based their opinions largely upon her condition in her childhood and early womanhood, and that they had only had infrequent contacts with her since 1929 or 1932, in which last year she took up her abode with Rosey Alexander, with whom she continued to live the remainder of her life. These later contacts also were merely casual, and were not sufficient to permit them to judge her mental capacity at the time she made the will. Also some of them were desirous of setting the will aside because of self-interest, apparently believing that if the will were set aside they might share in the estate. None of the contestants testified, and the evidence wholly fails to show that they were in any way related to Nancy Harjo. The only evidence to this effect was the statement of a witness that she had heard that Charley Coker, the father of contestants, was a son of the father of Nancy Harjo, but that the old man said he did not know. Some of these witnesses testified that Nancy could not cook, did not know the value of money and

could perform only the simplest household tasks, while others testified that she was a good cook, but subject to fainting spells when she became overheated, and for that reason was seldom permitted to cook a meal.

After contestants had introduced the testimony of these witnesses the proponents introduced the testimony of some nine witnesses, including that of the attorney who drew the will, and the beneficiaries. These witnesses testified that while Nancy was ignorant and uneducated she was apparently as intelligent as the average uneducated fullblood who could not speak or read English, and they testified to numerous instances where they had talked to her and she had shown reasonable intelligence.

Her guardian testified that she came to him and told him she wished to make a will, and that he advised her to see a lawyer, but did not give her the name of any. A little later she appeared in the office of T. H. Williams, Jr., the attorney who drew the will, and stated to him that she wished to make a will. Williams testified that she came to his office with the witness to the will who was dead at the time the will contest was heard, and who spoke both English and Seminole; that he explained to the attorney that Nancy wished him to interpret as she wanted to draw a paper, and that on inquiry the attorney found out that she wanted to make a will; that in answer to his questions she said that she wanted her property to go to Rosey, Dave and Fanny; that he learned their last names and that she informed him she wished her property equally divided between them. She also stated that she wished her guardian to be executor of the will. That he thereupon told her to come back at a certain time, and prepared the will and procured the presence of subscribing witnesses; that in their presence he questioned her as to whom the will gave the property and she said Rosey, Dave and Fanny; that she told him the will was exactly as she wanted it and that he then called Mr. Looney, who took the acknowledgment to the will. He testified that from his examination and observation of her Nancy was competent to know and understand the contents of the will, and that no undue influence or coercion was used in connection with the execution and attestation of the will.

In Jones v. Denton, 192 Okla. 234, 135 P. 2d 53, and again In re Waddle's Estate, 204 Okla. 71, 226 P. 2d 930, we held that where a person filed a will contest after the admission of the will to probate, the burden was upon him to establish the invalidity of the will. In re Nitey's Estate, 175 Okla. 389, 53 P. 2d. 215, we held that the fact that the testator was incompetent to manage her estate and had a guardian appointed for that purpose, did not give rise to a presumption of want of testamentary capacity; that ability to transact business was not a true test of testamentary capacity, and that an adjudication of incompetency to manage her estate and the appointment of a guardian for that purpose were not inconsistent with testamentary capacity.

In Re Martin's Estate, 199 Okla. 567, 188 P. 2d 862, we said:

"A person has testamentary capacity when his mind and memory are such that he knows, in a general way, the character and extent of his property, understands his relationship to the objects of his bounty and to those who ought to be in his mind on the occasion of making a will, and comprehends the nature and effect of the testamentary act."

Measured by the rule of law announced in these cases, we think the contestants wholly failed to establish the mental incapacity of the testatrix at the time she made the will in question, and that the judgment of the trial court was not clearly against the weight of the evidence, but is amply supported thereby. It is worthy of note that the beneficiaries under the will were the two next of kin of the testatrix, and a woman with whom she had lived for

many years and who had looked after her and cared for her during that time. These were the natural objects of her bounty, and the testimony of the subscribing witnesses, as well as the other witnesses introduced by the proponents, indicates that she understood to whom she was giving her property and clearly expressed herself as to why she was so disposing of it. So far as the record shows there is not the slightest evidence of any undue influence, duress or coercion practiced upon the testator at any time; that it appears that she voluntarily went first to her guardian and then to the attorney for the purpose of having the will drawn, and that when she first talked to the attorney she advised him to whom she wished to leave her property and why. It is also significant that both the county court and the district court sustained the validity of the will.

Affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.