24  291
f26  95
a26  99

24  291
28  123

[No. 3716.]

## HALL, COUNTY TREASURER, v. THE AMERICAN REFRIGERATOR TRANSIT COMPANY.

1. TAXATION.

The state has power to tax all subjects within its territory and jurisdiction and this right may, in the discretion of the legislature, be exercised over all property here temporarily, whether for trade, business or convenience, unless such exercise conflicts with some constitutional limitation.

2. SAME.

For the purpose of taxation, personal property may be separated from its owner and he may be taxed, on its account, wherever it is, although that may not be the place of his domicile.

3. SAME.

The state may impose upon a foreign corporation which habitually uses and employs a portion of its movable personal property (e. g. refrigerator cars) within this jurisdiction, its fair share of the burden of taxation.

4. SAME—INSTRUMENTS OF INTERSTATE COMMERCE.

No state can interfere with interstate commerce by the imposition of a tax for the privilege of transacting it, but this restriction does not abridge the right to tax, at their full value, the instruments within its territory and jurisdiction habitually used and employed in carrying on such business; and when such instruments are cars the assessment may be based upon the average number in use in the state during the year.

*Error to the District Court of Arapahoe County.*

THIS is an action brought by The American Refrigerator Transit Company, the defendant in error, to have a certain tax declared null and void, and to restrain plaintiff in error, as treasurer of Arapahoe county, from collecting the same. The receiver of The Union Pacific, Denver & Gulf Railway Company, in pursuance of the requirements of section 1 of the Session Laws of 1891, pp. 290–291 (sec. 3804 Mills' Ann. Stats.), reported to the state board of equalization that he had in use on the line of railway operated by him, during the year ending December 31, 1894, forty-two refrigerator

cars belonging to defendant in error; and thereupon the state board of equalization assessed to defendant in error said forty-two cars, at a valuation of $250 each, or a total valuation of $10,500; and distributed said assessment to the different counties through which the line of railway extended upon which said cars were used, according to the mileage in said counties respectively; that of such assessment, $750 was distributed to Arapahoe county. The county assessor of Arapahoe county made out a tax list based on such assessment, and delivered said list to plaintiff in error, as county treasurer of said county, with his warrant attached thereto for the collection of the sum of $21.63, being the amount of taxes so assessed against plaintiff; which amount the plaintiff in error was proceeding to collect, by distraint and sale of the property of defendant in error. The cause was tried to the court upon the following agreed statement of facts:

" Upon the issues made by the pleadings in this case, it is stipulated as follows, viz:

" *First.* That plaintiff is and was during the times mentioned in the petition a corporation duly organized and existing by virtue of the laws of the state of Illinois, with its principal office in the city of East St. Louis, in said state; that it is engaged in the business of furnishing refrigerator cars for the transportation of perishable products over the various lines of railroads in the United States; that these cars are more expensive than the ordinary box or freight cars; that the cars herein referred to are the sole and exclusive property of the plaintiff; and that the plaintiff furnishes the same to be run indiscriminately over any lines of railroad over which shippers or said railroads may desire to route them in shipping, and furnishes the same for transportation of perishable freight, upon the direct request of shippers or of railroad companies requesting the same on behalf of shippers, but on the responsibility of the carrier and not of the shipper; that as compensation for the use of its cars plaintiff receives a mileage of three fourths of a cent per mile run from each railroad company over whose lines said cars are

run, such rate of payment being the same as is paid by all railroad companies to each other for the use of the ordinary freight cars of each when used on the lines of others in the exchange of cars incident to through transportation of freight over connecting lines of railroads; that plaintiff has no, and never has had, any contract of any kind whatsoever by which its cars are leased, or allotted to, or by which it agrees to furnish its cars to, any railroad company operating within the state of Colorado; that it has, and has had during said times, no office or place of business, nor other property than its cars within the state of Colorado, and that all the freight transported in plaintiff's cars in or through the state of Colorado, including the cars assessed, was transported in such cars either from a point or points in a state of the United States outside of the state of Colorado, to a point in the state of Colorado, or from a point in the state of Colorado to a point outside of said state, or between points wholly outside of said state of Colorado, and said cars never were run in said state in fixed numbers nor at regular times, nor as a regular part of particular trains, nor were any certain cars ever in the state of Colorado except as engaged in such business aforesaid, and then only transiently present in said state for such purposes.

" That owing to the varying and irregular demand for such cars, the various railroad companies within the state of Colorado have not deemed it a profitable investment to build or own cars of such character, and therefore relied upon securing such cars when needed from the plaintiff or corporations doing a like business.

" That it is necessary for the railroad companies operating within the state of Colorado, and which are required to carry over their lines perishable freight, such as fruits, meats, and the like, to have such character of cars wherein they can safely transport such character of freight.

" *Second.* That the average number of cars of the plaintiff used in the course of the business aforesaid within the state of Colorado during the year for which such assessment was

made, would equal forty, and that the cash value of plaintiff's cars exceeds the sum of $250 per car, and that if such property of the plaintiff is assessable and taxable within such state of Colorado, then the amount for which such cars, the property of the plaintiff, is assessed by said state board of equalization, is just and reasonable, and not in excess of the value placed upon other like property within said state for the purposes of taxation.

" *Third.* That said company is not doing business in this state except as shown in this stipulation and by the facts admitted in the pleadings.

" *Fourth.* That in case it be found by the court under the undisputed facts set forth in the pleadings and the facts herein stipulated, that the authorities of the state of Colorado, under existing laws, have no power to assess or tax the said property of plaintiff, then judgment shall be entered herein for the plaintiff for the relief prayed, otherwise judgment shall be entered for the defendant."

The following constitutional and statutory provisions are referred to in the opinion.

" All corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on the real and personal property owned or used by them within the territorial limits of the authority levying the tax."   State Const. sec. 10, art. 10.

" Section 3765 (Mills' Ann. Stats.). All property, both real and personal, within the state, not expressly exempt by law, shall be subject to taxation. * * * "

" Sec. 3804. * * * It shall be the duty of said board (the board of equalization) to assess all the property in this state owned, used or controlled by railway companies, telegraph, telephone and sleeping or palace car companies. * * * "

" Sec. 3805. The president, vice-president, general superintendent, auditor, tax-agent, or some other general officer of such railway, sleeping or other palace, or telegraph or telephone company or corporation, owning, operating, controlling or having in its possession in this state any property, shall

furnish said board, on or before the fifteenth day of March in each year, a statement signed and sworn to by one of such officers, and showing in detail for the year ending on the thirty-first day of December preceding. * * * ”

" *Fifth.* A full list of rolling stock belonging to or operated by such railway company, setting forth the number, class and value of all locomotives, passenger cars, sleeping cars or other palace cars, express cars, baggage cars, mail cars, box cars, cattle cars, coal cars, platform cars, and all other kinds of cars owned or used by said company. The statement shall show *the actual proportion of the rolling stock* in use on the company's road, all of which is necessary for the transportation of freight and passengers, and the operation of the road within the state *during the year for which the statement is made.* The said statement shall also show the actual proportion of rolling stock of said company used upon leased lines and lines operated with others within the state, the mileage so leased and operated and the location thereof. * * *

" *Seventh.* * * * Whenever it shall be found that one corporation uses or controls any property belonging to or owned by another corporation, said board may assess such property either to the corporation using or controlling the same or to the corporation by which it is owned or to which it belongs. But every such corporation shall, in the statement to said board, set forth what property belonging to or owned by any other corporation is used or controlled by the corporation making the statement."

The court below found the issues in favor of the company, and rendered a decree granting the relief prayed for. To reverse this decree the treasurer brings the case here on error.

Messrs. GOUDY & TWITCHELL, Mr. BYRON L. CARR, attorney general, and Mr. CALVIN E. REED, assistant attorney general, for plaintiff in error.

Mr. GARLAND POLLARD, and Mr. PERCY WARNER, Mr. CHARLES M. KENDALL, of counsel, for defendant in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

The power of the state to levy the tax in question is challenged by defendant in error upon three grounds : *First,* because the cars being only transiently present within the state from time to time, acquired no such *situs* within the state as is necessary to give the state jurisdiction over them for the purposes of taxation; *second,* because such taxation would amount to a regulation of interstate commerce, and thus be repugnant to the exclusive power vested in congress to regulate such commerce ; *third,* because even if taxable within this state, no proper provision has been made by the legislature to assess and tax such property.

The first objection presents what we regard as the difficult question in the case, and its solution necessitates an inquiry as to the meaning of, and effect to be given to, the foregoing constitutional and statutory provisions.    It will be seen by reference thereto that it is made the duty of the state board of equalization to assess all the property in this state *owned, used or controlled* by railway companies, etc.    And it is made the duty of the officers of such companies to furnish the state board of equalization on or before March 15th of each year, a statement showing in detail, for the year ending on December 31 preceding "a full list of rolling stock belonging to or *operated by* such railway company. * * * The statement shall show *the actual proportion of the rolling stock in use on the company's road,* all of which is necessary for the transportation of freight and passengers, and the operation of the road within the state, during the year for which the statement is made."

The right of a state to tax all subjects within its jurisdiction is unquestionable ; and this right may, in the discretion of the legislature, be exercised over all property coming temporarily within its territory, whether for trade, business or convenience, unless such exercise conflicts with some constitutional limitation.    *R. R. Co. v. Peniston,* 18 Wall. 5 ; *Lane County v. Oregon,* 7 Wall. 71 ; *Pullman's Palace Car Co.*

*v. Pennsylvania*, 141 U. S. 18; 25 Am. & Eng. Ency. of Law, 18.

As was said in *Pullman's Palace Car Co. v. Pennsylvania*, "the state having the right, for the purposes of taxation, to tax any personal property found within its jurisdiction, without regard to the place of the owner's domicile, could tax the specific cars which at a given moment were within its borders."

It is clearly manifest that the purpose of these constitutional and statutory provisions is to subject all property *owned* or *used* by a railway or other corporation within the territorial limits of the state, to taxation according to its value, regardless of the domicile of its owner; and in so doing, they exercise a well-recognized function of legislation.

"For the purposes of taxation, as has been repeatedly affirmed by this court, personal property may be separated from its owner; and he may be taxed, on its account, at the place where it is, although not the place of his own domicile, and even if he is not a citizen or a resident of the state which imposes the tax." *Pullman's Palace Car Co. v. Pennsylvania, supra.*

While it is true, as stated by counsel for defendant in error, that it has been uniformly held that property merely in transit through a state acquires no *situs* for the purposes of taxation; and, it may be further conceded that the property so in transit would not, within the letter and spirit of our legislation, acquire such *situs*, yet it by no means follows that the cars in question are entitled to exemption under this rule. As shown by the agreed statement of facts, these cars are more expensive than the ordinary freight cars, and the various railway companies within the state of Colorado have not deemed it a profitable investment to build or own such cars, and therefore rely upon securing them from defendant in error, or like corporations, when needed; that it is necessary for the railroad companies operating within the state of Colorado to have such character of cars in order to transport over their respective lines perishable freight; and

if they could not secure them when needed, it would be necessary for them to own and keep them as a part of their rolling stock. The sum and substance of which amounts to this : that such cars are a part of the necessary equipment of the different railroads using them in the state, and as essential to the transaction of their business as any other portion of their rolling stock. While it appears that said cars are not run in the state in fixed numbers or at regular times, and that certain or specific cars are only transiently in the state, yet it is shown that the average number of cars used in the course of the business aforesaid within the state during the year for which such assessment was made, was equal to forty. Under these circumstances, we think the effect of our legislation is to give to the cars in question a *situs* for the purpose of taxation ; and that they were " *habitually used and employed* " in the state, in the sense that these words are used in *Marye v. B. & O. Ry. Co.*, 127 U. S. 117, and are assessable under the rule therein announced. Mr. Justice Matthews, who delivered the opinion of the court, in upholding the right of the state of Virginia to tax the B. & O. Ry. Co., whose *situs* was in Maryland, upon rolling stock used interchangeably upon the main line and branches of its road in the states of Maryland, Virginia, Pennsylvania and states west of the Ohio river, as the necessities of the company required, said :

" If the Baltimore and Ohio Railroad Company is permitted by the state of Virginia to bring into its territory and there habitually to use and employ a portion of its movable personal property, and the railroad company chooses so to do, it would certainly be competent and legitimate for the state to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon other similar property used in the like way by its own citizens."

The status of the cars in question was also substantially like that of those under consideration in *Pullman's Palace Car Co. v. Pennsylvania, supra,* in that, there was an average number in use within the state during the period for which

the tax was levied; and we think that under the reasoning of that case, they were subject to taxation in this state.

*Pickard v. Pullman S. Car Co.*, 117 U. S. 34, and *Pullman S. Car Co. v. Nolan*, 22 Fed. Rep. 276, are mainly relied on as sustaining a contrary view. While the court uses general expressions touching the question of *situs* that seem to sustain the contention of defendant in error, it is to be observed that the question then under consideration was the validity of a license or privilege tax imposed upon cars employed in interstate commerce, and the language touching the *situs* of the property was used with reference to the right of a state ·to impose such a tax, and not as to its jurisdiction to impose a property tax, as in the case under consideration. In *Pullman's Palace Car Company v. Pennsylvania, supra,* Mr. Justice Gray, referring to these and kindred cases, says:

" Much reliance is also placed by plaintiff in error upon the cases in which this court has decided that citizens or corporations of one state cannot be taxed by another state for a license or privilege to carry on interstate or foreign commerce within its limits ; but in each of those cases, the tax was not upon the property employed in that business, but upon the right to carry on the business at all; and was thereby held to impose a direct burden upon the commerce itself."

It will be readily seen, therefore, that the expressions of the court in regard to the question of *situs* could have no significance or bearing upon that question as presented in this case. If it can be said that the court in those cases intended to hold that under the conditions therein disclosed, the cars acquired no *situs* that would subject them to a property tax, then its finding was in direct conflict with the conclusion reached in the later cases above referred to.

The tax now under consideration is not a license tax, or in any sense a tax for the privilege of transacting interstate commerce, but only a property tax imposed upon certain cars employed in such commerce. The second objection urged against its validity is therefore clearly untenable. The power of a state to impose such a tax is too well settled to

admit of discussion.    As was said by Mr. Justice Brewer, in passing upon the petition for rehearing in *Adams Express Company v. Ohio*, 166 U. S. 185: "Again and again has this court affirmed the proposition that no state can interfere with interstate commerce through the imposition of a tax, by whatever name called, which is in effect a tax for the privilege of transacting such commerce; and it has as often affirmed that such restriction upon the power of a state to interfere with interstate commerce does not in the least degree abridge the right of a state to tax at their full value all the instrumentalities used for such commerce."

And as was said by Mr. Justice Gray, in *Pullman's Palace Car Company v. Pennsylvania, supra:* "The cars of this company within the state of Pennsylvania are employed in interstate commerce; but their being so employed does not exempt them from taxation by the state; and the state has not taxed them because of their being so employed, but because of their being within its territory and jurisdiction."

To the same effect are *The Postal Tel. Cable Co. v. Adams*, 155 U. S. 688, and the original opinion, in *Adams Ex. Co. v. Ohio*, 165 U. S. 194, in which this question is fully discussed and authorities reviewed.

In the view we take touching the *situs* of the property, but little remains to be said upon the question presented by the third objection, since the reasons advanced in its support are mainly those relied on as sustaining the claim of defendant in error that its cars were only transiently here, and were not "used or controlled" in the state within the meaning of our statute, an assumption that we have found to be unwarranted under the agreed facts in the case.    Constituting, as we have seen, a part of the necessary equipment of the railroad company using them, the cars clearly come within the class of property intended to be reached by the foregoing legislation; and consequently within the jurisdiction of the state board of equalization to assess and tax them. That the procedure prescribed furnishes a mode, convenient and equitable to all concerned, for the valuation and taxa-

tion of this class of property, is settled by prior decisions of this court.    *Carlisle v. Pullman Palace Car Co.*, 8 Colo. 320 ; *Denver & Rio Grande Ry. Co. v. Church*, 17 Colo. 1.

And the right to base the assessment upon the average number of cars in use within the state during the year is recognized in *Pullman's Palace Car Co. v. Pennsylvania*, *supra;* and expressly upheld in *Marye v. B. & Ohio Ry. Co.*, *supra*.    In the opinion quoted from, Justice Matthews says:

" And such a tax might be properly assessed and collected in cases like the present where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business.    In such cases the tax might be fixed by an appraisement and valuation of the average amount of the property thus habitually used."

Our conclusion therefore is that the tax in question is not obnoxious to either of the objections urged against it, and the court below erred in restraining its collection.    Its judgment is accordingly reversed, and the cause remanded, with direction to the court below to dismiss the action.

*Reversed.*