Williams, J.
 

 The county auditor, respondent herein, refused to place the special assessments for street lighting and the reassessments on the tax list and duplicate on the ground that liens therefor were discharged by the forfeited land sale.
 

 The question is whether the Court of Appeals committed prejudicial error in upholding the action of the respondent and dismissing relator’s petition.
 

 Under Section 3897, General Code, a special assessment is from the date of the assessment a lien upon the lots and parcels of land assessed. By virtue of Section 3812-4, General Code, special assessments may be levied and collected for the lighting of a street. It is not questioned that the assessments and reassessments were liens upon the forfeited lots and lands at the time of the forfeited land sale.
 

 The liens, then, may be deemed to have been in force and to have attached not only as to past due instalments but also as to the then future instalments for 1944 and subsequent years. Did the liens for instalments falling due in the future survive the sale?
 

 The legal rights of the parties with respect thereto are determined by the following statutory provisions:
 

 Section 5752, General Code:
 

 * # *
 

 
 *436
 
 ‘ ‘ Such sale shall convey the title to the said tract or parcel of land, divested of all liability for any arrearages of taxes, assessments, penalties, interest and costs which remain after applying thereon the amount for which it was sold.”
 

 Section 5762, General Code:
 

 “When a tract of land has been duly forfeited to the state and sold agreeably to the provisions of this chapter, the conveyance of such real estate by the county auditor shall extinguish all previous title thereto and invest the purchaser with a new and perfect title, free from all liens and encumbrances, except such easements and covenants running with the land as were created prior to the time the taxes or assessments, for the nonpayment of which the land was forfeited, became due and payable.”
 

 These sections were amended effective August 11, 1943 (120 Ohio Laws, 154) to include the above quoted provisions. What is quoted from Section 5752 was formerly in Section 5755. These sections are
 
 in pari materia
 
 and must be construed together. The apjjlication of this rule is not affected by the fact that prior to the inclusion of the quoted provisions in 120 Ohio Laws, 154, the provision found in Section 5752 was in existence and that found in Section 5762 was not.
 

 The relator maintains that the word “arrearages” limits the meaning, of the provisions so that the purchaser took the forfeited land subject to liens of special assessment instalments and of reassessment instalments falling due in the future. The word “arrearages,” however, has several meanings, one of which is indebtedness. In construing the meaning of a word that is used in different senses it is necessary to look to the context, and since the statutory provisions under scrutiny are
 
 in pari materia,
 
 the context of all the kindred provisions must be weighed. Fol
 
 *437
 
 lowing this requirement we construe “arrearages” to moan “indebtedness.” By this construction the auditor was right' in the position taken and the lands were sold “free from all liens and encumbrances, except such easements and covenants running with the land as were created prior to the time the taxes or assessments, for the nonpayment of which the land was forfeited, became due and payable.” The property passed to the purchasers free from the lien of the instalments falling due in the future.
 

 But, it is maintained by relator, that such a construction makes the statutes retroactive, deprives the municipality of vested rights in the assessments, impairs the obligation of the bonds issued in anticipation of the collection of assessments and denies the equal protection of the laws.
 

 The claims that the inhibition against retroactive legislation is violated, and that vested rights of the municipality are interfered with are kindred and will be considered together. The municipality had a vested right in the assessment liens and any statute that impaired or took away that right would be retroactive and invalid. But there is no vested right in an existing method of procedure for the collection of taxes and assessments
 
 (Illinois Central Rd. Co.
 
 v.
 
 City of Wenona,
 
 163 Ill., 288, 45 N. E., 265, and
 
 Benshoof
 
 v.
 
 City of Iowa Falls,
 
 175 Iowa, 30, 156 N. W., 898) and legislation which relates exclusively to remedial rights is not violative of the constitutional provision against the enactment of retroactive laws.
 
 Smith
 
 v.
 
 New York Central Rd. Co.,
 
 122 Ohio St., 45, 170 N. E., 637;
 
 Peters
 
 v.
 
 McWilliams,
 
 36 Ohio St., 155. Moreover, a statute giving a new remedy or enlarging an existing one does not impair a vested right which the remedy will serve to enforce and does not violate the inhibition against retroactive laws.
 
 In re Commrs. of City of Elizabeth,
 
 49 N. J. Law, 488, 10 A., 363.
 

 
 *438
 
 The real purpose of the statutory provisions under consideration in the instant case was to give the purchaser a “new and perfect title, free from all liens and encumbrances” excepting the specified easements and covenants. Even the “possibility of reassessment” has been held to be an incumbrance under a similar statute in another jurisdiction.
 
 Municipal Investors Assn. v. City of
 
 Birmingham, 298 Mich., 314, 299 N. W., 90. If forfeited lands were to be sold subject to assessment instalments falling due in the future, either less would be obtained from the purchasers or there would be no sale for want of bidders. Who is injured by a requirement that land so sold be free from liens and incumbrances so that the most can be realized from the property sold? The statutory provisions under scrutiny do not affect vested rights but relate only to remedial rights and do not violate the constitutional inhibition against retroactive legislation.
 

 Are the obligations of bonds issued in anticipation of the collection of assessments impaired? A sale which frees from liens is a way of protecting the bondholders by obtaining full value for the land.
 
 Keefe
 
 v.
 
 Oakland County Drain Commr.,
 
 306 Mich., 503, 11 N. W. (2d), 220; affirmed 322 U. S., 393, 88 L. Ed.,--, 64 S. Ct., 1072. But the bondholders are protected anyway. The bonds are general obligations of the municipality and the processes of general taxation are available to meet their payment. There is no impairment of contractual obligations to bondholders.
 

 Counsel for relator, in urging that there is discrimination which amounts to violation of the equal-protection clause, states that “property owners who' are not in default in the payment of special assessments remain bound to pay their future assessments, while the land forfeited to the state for tax delinquency under the view of the opposition escapes its future assessments.” Where lots and lands are of a less value
 
 *439
 
 than the amount of the unpaid taxes and assessments, the owner may voluntarily pay the annual instalments of taxes and assessments as they come due or allow the property to be forfeited for nonpayment and sold at forfeited land sale to the highest bidder, free from tax and assessment liens. Each owner has his choice. The divergence of choice does not work a discrimination which denies the equal protection of the laws.
 

 The statutory provisions as construed herein are not unconstitutional in their operation and effect.
 

 The fact that the lien for future lighting assessments is blotted out by this interpretation, though the service for the years 1944 and 1945 had not been fully rendered at the time of the sale in July 1944, has not escaped the attention of the court. In
 
 Home Owners Loan Corp.
 
 v.
 
 Tyson,
 
 133 Ohio St., 184, 12 N. E. (2d), 478, the distinction between special assessments and service assessments under legislation, which did not expressly make the latter a lien, was pointed out. Here we have special assessments for street lighting which are by statute (Sections 3812 and 3812-4, General Code), placed in the same category as special assessments for public improvements. Each kind of assessment becomes a lien as heretofore pointed out. The municipality may pass an ordinance covering-street lighting each year and impose the burden of assessments upon the then owners of benefited lands. The municipality, however, elected to pass an ordinance extending the assesments five years into the future beginning in 1941 and cannot now justly complain of legislation that gives the purchaser at a forfeited land sale a “new and perfect title” as to such assessments among others.
 

 Yet a distinction should be made between street lighting furnished after the forfeited lots and lands are sold and that furnished before. Lighting furnished afterward, being a benefit to lands after purchase, is
 
 *440
 
 properly chargeable to such lands, though not a lien thereon after sale. Section 3905, G-eneral Code, requires the county auditor to place assessments, such as # lighting assessments, on the tax lists and duplicates when certified. The agreed statement of facts recites that “certain of said street lighting assessment instalments, certified as aforesaid to said county auditor for collection on the annual tax lists and duplicates, and falling due this year [1944] and next year, are uncollected.” An assessment or reassessment for public improvements falling due in the future could not be so certified after a forfeited land sale. The benefits therefrom attach to the land before the sale takes place. Consequently the right to certification dies with the lien. On the contrary, benefits from street lighting that attach after the sale have different characteristics, may be certified, put upon the tax list and duplicate, and collected like taxes.
 

 As to the reassessment instalments accruing after the forfeited land sale, the relator is not entitled to have them put on the tax lists and duplicates for collection and is not entitled to a writ of mandamus; but as to street lighting, furnished in 1944 and 1945, subsequent to the sale, the county auditor is required to place the assessments therefor on the tax list and duplicate for collection and the relator is entitled to a writ of mandamus to compel the county auditor to perform his duty.
 

 Judgment of the Court of Appeals is modified accordingly and as modified is affirmed.
 

 Judgment modified and affirmed as modified.
 

 Weygandt, C. J., Zimmerman, Bell, Matthias and Hart, JJ'., concur.
 

 Turner, J., not participating.