FRATERNAL ORDER OF POLICE, YOUNGSTOWN LODGE No. 28, ET AL., *v.* HUNTER, MAYOR, CITY OF YOUNGSTOWN, ET AL.

(No. 73 CI 133—Decided May 2, 1973.)

Common Pleas Court of Mahoning County.

RIGELHAUPT, J. This is an action wherein the plaintiffs pray the court to determine their rights and duties as to residency under the laws of the state of Ohio, and the Rules and Regulations of the Civil Service Commission of the city of Youngstown; and, further, that Rule IV, Section 9(F) of the Youngstown Civil Service Commission (hereinafter referred to as the Rule) requiring residency of a tenured civil service employee be declared invalid.

Said Rule was adopted Jan. 20, 1972, and is as follows:

"Any officer or employee not residing within the city limits of Youngstown, except as otherwise provided in Rule

IV, Section 5, *is subject to dismissal from service of the city.*"

The only real issues in this case are as follows:

1. Is Rule IV, Section 9(F), adopted Jan. 20, 1972 operative as against civil service employees who entered the classified service of the city prior to Jan. 20, 1972, that being the date of adoption of said Rule?

2. Does the Rule violate the due process clause of the Fifth Amendment to the United States Constitution?

Coming now to consider the first of said issues, certain constitutional provisions and limitations must be considered.

Section 28, Article II of the Constitution of Ohio provides, as follows:

"The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts * * *."

The words "retrospective" and "retroactive," as apply to laws, are synonymous. Very early in our history, Justice Story, in the case of *Society for the Propagation of the Gospel* v. *Wheeler* (1814), 22 Fed. Cases 756, case No. 13,156, reported by 2 Gall 105, defined the term, "retrospective."

In that case, the Constitution of New Hampshire came into question. In the 23rd Article of the Bill of Rights of that Constitution is the following declaration:

"Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made either for the decision of civil causes or the punishment of offenses."

Justice Story at page 767, defined "retrospective" as follows:

"Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective; and this doctrine seems fully supported by the authorities."

The Supreme Court of Ohio, and its lower courts, have

consistently followed the definition of Justice Story. *Rairden* v. *Holden*, 15 Ohio St. 207, 210; *Miller* v. *Hixson*, 64 Ohio St. 39; *Sylvania Buses* v. *Toledo*, 118 Ohio St. 187, 198; *Wheatley* v. *A. I. Root Co.*, 147 Ohio St. 127.

It has been held that a retroactive enactment, extinguishing a vested legal relationship, would amount to deprivation of property without due process of law, and thus violates the 14th Amendment to the Constitution of the United States. *State, ex rel. South Euclid*, v. *Zangerle*, 145 Ohio St. 433.

The Supreme Court of Ohio succinctly defined ''retroactive'' laws as follows:

''A statute which creates a new obligation in respect to transactions or considerations already past is violative of Article II, Section 28 of the state constitution, which forbids the enactment of retroactive laws by the General Assembly.'' *Safford, Supt. of Ins.*, v. *Metropolitan Life Ins. Co.* (1928), 119 Ohio St. 332.

The foregoing interpretation of the term ''retroactive'' or ''retrospective'' has been followed, generally, in the United States. *Neild* v. *District of Columbia* (C. A. D. C. 1940), 110 F. 2d 246, 254; *State, ex rel. James*, v. *Mills* (Del. Ct. in Banc 1947), 44 Del. 125, 132, 57 A. 2d 99, 102; *London Guarantee & Accident Co.* v. *Pittman* (1943), 69 Ga. 146, 25 S. E. 2d 60, 65, 66; *Wilson* v. *Greer* (1915), 50 Okla. 387, 398, 151 P. 629, 632.

A retroactive statute not only violates the Constitution of Ohio, but also violates Section 10, Article I of the United States Constitution, which is as follows:

''No state shall * * * pass * * * law impairing the obligation of contracts * * *.''

The above limitation upon the states by the federal Constitution applies to municipal ordinances and administrative regulations having the force and operation of statutes. *New Orleans Water-works Co.* v. *Rivers* (1885), 115 U. S. 674; *Walla Walla City* v. *Walla Walla Water Co.* (1898), 172 U. S. 1; *Vicksburg* v. *Vicksburg Waterworks Co.* (1906), 202 U. S. 453; *Grand Trunk Western Rd. Co.* v. *Railroad Commission of Indiana* (1911), 221 U. S. 400;

*Atlantic Coast Line Rd. Co.* v. *City of Goldsboro, North Carolina* (1914), 232 U. S. 548; *Cuyahoga River Co.* v. *City of Akron* (1916), 240 U. S. 462; *Appleby* v. *Delaney, Commissioner* (1926), 271 U. S. 403.

The rule of the civil service commission as to residency, prior to the adoption of Rule IV, Section 9(F), on January 20, 1972, was Rule No. 7, which is as follows:

"Applicants must be citizens of the United States. For positions in the city service, applicants must have resided in the city of Youngstown at LEAST ONE YEAR LAST PAST."

Therefore, Rule No. 7 was the only valid rule in force as to residency of classified employees of the city of Youngstown.

There being no rule as to residency prior to January 20, 1972, those employees of the city of Youngstown who, by examination, or otherwise, entered the classified service of the city of Youngstown prior to January 20, 1972, were not required by the rules of the civil service commission to maintain a residence in the city of Youngstown.

Therefore, having in mind the provisions of the state and federal Constitutions, as well as the case law on this issue, it is the opinion of the court that said Rule is not enforceable against any classified employee who entered the classified service prior to January 20, 1972.

Coming now to discuss the second issue, does Rule IV, Section 9(F) of the Youngstown Civil Service Commission, adopted January 20, 1972, violate the Fifth Amendment to the Constitution of the United States?

The United States Supreme Court, in the case of *Kent* v. *Dulles, Secretary of State* (1958), 357 U. S. 116, 125-126, held as follows:

"The right to travel is a part of the 'liberty' of which the citizen cannot be deprived of without due process of law under the Fifth Amendment. * * * Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage. * * *"

In the case of *United States* v. *Guest*, 383 U. S. 745, 757-758, the court said:

"* * * The constitutional right to travel from one state

to another * * * occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized * * *.

"* * * [The] right finds no explicit mention in the Constitution. The reason, it has been suggested, is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created. In any event, freedom to travel throughout the United States has long been recognized as a basic right under the Constitution.* * *"

Two cases, one determined by the California Court of Appeal for Los Angeles District, Division 3 (*Ector* v. *Torrance* [1972], 28 Cal. App. 3d 293, 104 Cal. Reptr. 594), and one by the Supreme Court of New Hampshire (*Donnelly* v. *Manchester* [1971], 111 N. H. 50, 274 A. 2d 789), construe city ordinances which attempt, as in this case, to restrict the residence of two classified city employees, one a librarian (California), and the other a school teacher (New Hampshire), to residency within the municipality where they were employed.

The courts determined that both of those ordinances were violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

The courts had before them a question of whether a requirement that a municipal employee reside in the municipality penalizes a right of freedom to travel to a substantial degree, either within or without the state.

The courts held that in passing upon the reasonableness of a restriction upon private rights, the importance of the public benefit is balanced against the seriousness of the restriction of the private right sought to be imposed. There may be ordinances and rules which, to some extent, impair private rights; and the test which has usually been employed is whether the restriction is reasonably necessary in order that it be paramount to the constitutional right of the employee "to travel * * * across frontiers in either direction, and inside frontiers as well, was a part of our heritage." (*Kent* v. *Dulles, supra.*)

It has been determined that any classification which

serves to penalize the exercise of a constitutional right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional. *Shapiro* v. *Thompson* [1969], 394 U. S. 618, 634.

The constitutionality of the Rule now before this court depends on whether or not it is a reasonable rule. Any classification which serves to penalize the exercise of a constitutional right (freedom of movement across frontiers in either direction, and inside frontiers as well), unless shown to be necessary to promote a *compelling governmental interest*, is unconstitutional.

The defendants produced no evidence of any kind from which the court could determine the reasonableness of this rule. Reasonableness is a matter of fact, and must be proved by evidence. No evidence having been produced to support the reasonableness of the rule, the court must assume that the reasonableness of said rule could not be sustained by the defendants. There must be some relationship between the work required of a classified employee, and the necessity of his being a resident of the city of Youngstown in order to do that work. The city or the civil service commission has produced no evidence on this issue.

The court, therefore, finds, in the absence of any evidence which should have been produced on the issue, that under the Constitution of the United States, the Rule sought to be enforced is an unconstitutional interference with the rights of an individual.

Wherefore, it is ordered, adjudged and decreed that Rule IV, Section 9(F) of the Youngstown Civil Service Commission is unconstitutional and void for the following reasons:

1. It is retroactive in its operation;

2. It is unreasonable because it violates the rights of the individual guaranteed by the Fifth Amendment to the Constitution of the United States.

*Judgment is rendered accordingly.*