Belmore T. MARTIN and Marion M. Martin, Park Lane Condominium Association, American Invesco, Katherine Wuth, Frank McWilliams, Donald Baldovin, Aksel Nielsen, Arline Bragar, Monroe Tyler, Patricia Walter, William McClintock, Harry Struck, Charles Dewey, Edward Perry, Judith Freehling, Judith Pasternack, Dorothy Davidor, Lupe-Rebeka Sananiego, Stephan Ring, John Kellar, Walter Rothermal, Shiela Heller, Edward Cribbs, Sidney Werkman, Simpson Marcus, Dorothy Rosenbaum, Miles Rader, Henry Schwalbe, Richard Shetterly, Armand Marcus, Margret Chaffe, Donna Hultin, Marcus and Betty Bogue, Charles Albi, Helen Egan, Josephine Eberhart, Ruby Glaube, Phyllis Frank, William Haddon, Robert Graham, Dorothy Watson, Madeline Bruff, Manley Nelson, Arthur Burke, Catherine Haddon, Robert Tschappat, Arthur Kavanaugh, Harvey Stradley, Donald Cobbs, Jane Elston, Janice Gartshore, Philip and Lillie Spanier, Carole Cook, Evelyn Packard, Curtis Brunk, Bertram Pear, Gerald Kessler, Jean DeBray, Boyd Willett, Samuel Lurie, Dorothy Cameron, Phyllis Freed, William Durey, Gerald Olesh, E. Paul Carter, Owen Murphy, Raymond Cote, Frank Roberts, Dorothy Warner, N. Milan Hart, Ralph Hartwig, Marjorie Holcomb, Gwendolyn Rice and Cy Mintz, Plaintiffs-Appellees,

v.

BOARD OF ASSESSMENT APPEALS OF the STATE of Colorado and Henry F. Shriver, Charles H. Bradley, F. William Brier in their capacities as members of the Board of Assessment Appeals of the State of Colorado; and the Board of Equalization of the City and County of Denver, Defendants-Appellants.

No. 83SA297.

Supreme Court of Colorado,
En Banc.

Oct. 15, 1985.

Shafroth and Toll, P.C., C. Kevin Cahill, Belmore T. Martin, Denver, Colo., for plaintiffs-appellees.

Max P. Zall, City Atty., Eugene J. Kottenstette, Jr., Robert F. Strenski, Assistant City Attys., L. Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Billy J. Shuman, First Asst. Atty. Gen., Denver, for defendants-appellants.

ROVIRA, Justice.

The issue in this case is whether the valuation for assessment tax statute, section 39–1–104(11)(b), 16B C.R.S. (1982), as amended in 1982 by H.B. 1236, Ch. 145, sec. 1, section 39–1–104(11)(b), 1982 Colo.Sess. Laws 553, 553–54, as applied to the 1982 tax year, is retroactive in operation, and therefore in violation of article II, section 11, of the Colorado Constitution. Concluding that it is not, we reverse the judgment of the Denver District Court.

## I.

The Parklane Condominiums, located in Denver, Colorado, were created by converting rental apartments to condominiums in 1979. More than 51% of the apartments were sold.

In 1982, the Denver assessor, finding that the creation of condominium ownership was an "unusual condition," valued the Parklane Condominiums in accordance with the provisions of section 39–1–104(11)(b), 16B C.R.S. (1982), which reflects the changes made by H.B. 1236.[1] H.B. 1236 was not signed into law until May 3, 1982. The condominium owners protested the 1982 valuation on the ground that their condominiums should have been valued according to the law as it existed on January 1, 1982. They argued that the provision in H.B. 1236 mandating that it shall apply to property tax years commencing on or after January 1, 1982,[2] violates article II, section 11 of the Colorado Constitution, because it is effective as of an assessment date prior to its becoming law.

After the owners' protests were heard and denied by the Denver assessor and the Board of Equalization of the City and County of Denver (Denver Board), they filed an appeal with the Board of Assessment Appeals of the State of Colorado (BAA) claiming that any increase in assessment based on H.B. 1236 was unconstitutional. After a hearing, the BAA held that the Denver assessor correctly valued the property in accordance with the provisions of section 39–1–104(11)(b), as amended by H.B. 1236, and that it did not have the authority to determine the constitutional issue presented by the owners.

The owners then filed a complaint and petition for review against the BAA and the Denver Board in the district court pursuant to section 39–8–108, 16B C.R.S. (1982). They contended that section 39–1–104(11)(b), 16B C.R.S. (1982), as amended by H.B. 1236, violated various provisions of the Colorado and United States constitutions. After a hearing, the district court held that the findings and order of the BAA and the decision of the Denver Board "denying [the owners'] Petition to make an administrative review of the 1982 valuation for assessment are reversed for the reason that H.B. 1236, which amends C.R.S. 39–1–104(11)(b), violates Article II, Section 11, of the Colorado Constitution."

Subsequently, the district court denied a motion for new trial and remanded the case to the BAA for further proceedings in light of its holding that H.B. 1236 is unconstitutional as applied. Shortly thereafter, it granted the defendants' motion for entry of judgment pursuant to C.R.C.P. 54(b), finding "no just reason for delay with re-

---

1. H.B. 1236 provided in pertinent part:

**39–1–104. Valuation for assessment.** (11)(b)(I) The provisions of subsections (9) and (10) of this section are not intended to prevent the assessor from taking into account, in determining actual value during the intervening years between base years, any unusual conditions in or related to any real property which would result in an increase or decrease in actual value. For the purposes of this paragraph (b), an unusual condition which could result in an increase or decrease in actual value is limited to the installation of an on-site improvement, addition to or remodeling of a structure, change of use of the land, THE CREATION OF A CONDOMINIUM OWNERSHIP OF REAL PROPERTY AS RECOGNIZED IN THE "CONDOMINIUM OWNERSHIP ACT", ARTICLE 33 of TITLE 38, C.R.S. 1973, new regulations restricting or increasing the use of the land, or a combination thereof, detrimental acts of nature, and damage due to accident, vandalism, fire, or explosion. When taking into account such unusual conditions which would increase or decrease the actual value of a property, the assessor must relate such changes to the base year level of values as if the conditions had existed at that time.

(II) THE CREATION OF A CONDOMINIUM OWNERSHIP OF REAL PROPERTY BY THE CONVERSION OF AN EXISTING STRUCTURE SHALL BE TAKEN INTO ACCOUNT AS AN UNUSUAL CONDITION AS PROVIDED FOR IN SUBPARAGRAPH (I) OF THIS PARAGRAPH (b) BY THE ASSESSOR, WHEN AT LEAST FIFTY–ONE PERCENT OF THE CONDOMINIUM UNITS, AS DEFINED IN SECTION 38–33–103(1), C.R.S. 1973, IN A MULTI–UNIT PROPERTY SUBJECT TO CONDOMINIUM OWNERSHIP HAVE BEEN SOLD AND CONVEYED TO BONA FIDE PURCHASERS AND DEEDS HAVE BEEN RECORDED THEREFOR.

Ch. 145, sec. 1, § 39–1–104(11)(b), 1982 Colo. Sess.Laws 553, 553–54. The capital letters indicate the new material added to the existing statute.

2. Ch. 145, sec. 2, § 39–1–104(11)(b), 1982 Colo. Sess.Laws 553, 554, states that "This act shall apply to property tax years commencing on or after January 1, 1982."

gard to the constitutionality of H.B. 1236." This appeal followed.[3]

## II.

The general prohibition against retroactive laws contained in article II, section 11, of the Colorado Constitution provides:

> No ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly.

The parties agree that the test for determining whether a law is "retrospective in its operation" is that which was first stated in *Denver, South Park & Pacific Railway Co. v. Woodward*, 4 Colo. 162 (1878). There, this court adopted Judge Story's popular definition of retrospective laws which reads:

> Upon principle, every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective....

4 Colo. at 167, citing *Society for the Propagation of the Gospel v. Wheeler*, 22 F.Cas. 756 (C.C.N.H.1814) (No. 13,156). *See also P-W Investments, Inc. v. City of Westminster*, 655 P.2d 1365, 1371 (Colo. 1982); *Continental Title Co. v. District Court*, 645 P.2d 1310, 1314 (Colo.1982). Consequently, the property owners contend that section 39-1-105, 16B C.R.S. (1982), vested in them, as of noon, January 1, 1982, an assessed value of their property for the taxable year 1982 based on section 39-1-104(11)(b) as it existed on that date and that such value could not be changed by the May 3, 1982 amendment, without violating the constitutional prohibition.[4] In addressing this contention, we are not without precedent.

In *American Refrigerator Transit Co. v. Adams*, 28 Colo. 119, 63 P. 410 (1900), this court examined an act passed by the Eleventh General Assembly in 1897 which provided for the assessment and taxation of railroad cars other than those which were the property of railroad companies to determine whether it operated retrospectively. Essentially, the act provided that the officers of such companies must make a statement on or before March 15 in each year, under oath, to the state's board of equalization showing the aggregate number of miles their cars traveled in the state during the preceding year ending December 31 and another statement showing the average number of miles traveled per day by the cars in the ordinary course of business during that year. Ch. 70, sec. 2, 1897 Colo.Sess.Laws 259, 260. With this information, the board of equalization was directed to ascertain and fix a value upon each particular class of cars used by these companies in the state each year. Ch. 70, sec. 3, 1897 Colo.Sess.Laws 259, 260–61. The purpose of the act was to subject all property owned or used by these companies within the territorial limits of the state to taxation according to its value. *See Hall v. American Refrigerator Transit Co.*, 24 Colo. 291, 51 P. 421 (1897), *aff'd*, 174 U.S. 70, 19 S.Ct. 599, 43 L.Ed. 899 (1899).

To comply with the 1897 act, American Refrigerator Transit Company and twelve other companies operating railroad cars in the state filed statements with the board before March 15, 1898, showing mileage made by their cars for the year ending December 31, 1897. They then filed a complaint in the district court seeking an injunction to restrain the board from assessing their cars under the 1897 act. The district court denied the relief sought.

---

**3.** Due to the constitutional challenge of a statute, we accepted jurisdiction. § 13-4-110(1)(a), 6 C.R.S. (1973).

**4.** Section 39-1-105, 16B C.R.S. (1973), provides: All taxable property, real and personal, within the state at twelve noon on the first day of January of each year, designated as the official assessment date, shall be listed, appraised, and valued for assessment in the county wherein it is located on the assessment date. Personal property shall be listed and valued separately from real property.

On appeal, the taxpayers claimed that the 1897 act was retrospective in its operation, and violated article II, section 11 of the Colorado Constitution, because it did not go into effect until April 1, 1897, and the board, acting under its provisions, had received statements which included mileage made by their railroad cars during the first three months of 1897 before the act took effect. Rejecting that argument, this court stated:

We do not think this objection tenable. The cars were subject to taxation under the constitution and statutes theretofore in existence; and the act in question merely provides a mode of ascertaining the average number of cars belonging to the respective companies, used in this state during the year, and which were liable to taxation for that year, under the then existing laws.

28 Colo. at 124, 63 P. at 412.[5]

As *American Refrigerator Transit Co.* makes clear, property owners have no vested right to have their taxable property assessed by particular methods employed in prior years. Nor is application of a statute rendered retroactive and unlawful merely because the facts upon which it operates occurred before the adoption of the statute. *Continental Title*, 645 P.2d at 1314 (upholding the application of a jurisdictional statute to a complaint filed prior to adoption of the statute). Section 39–1–104(11)(b), 16B C.R.S. (1982) merely instructs the Denver assessor to consider the fact of condominium conversion as an additional factor in determining the actual value of property that is already subject to taxation. Since the statute only alters the factors which may be considered in determining actual value, it does not impair the taxpayers' vested rights, and therefore is not unconstitutionally retrospective in its operation.

In concluding that H.B. 1236 is not unconstitutionally retrospective, we find support in the decisions of other states with specific constitutional prohibitions against retrospective legislation. State courts applying such prohibitions have often found that short term retroactive changes in tax statutes do not impair vested rights. *See, e.g., State ex rel. City of South Euclid v. Zangerle*, 145 Ohio St. 433, 62 N.E.2d 160 (1945) (there is no vested right in an existing method or procedure for collection of taxes and assessments); *Smith v. Davis*, 426 S.W.2d 827, 834 (Texas 1968) (taxpayer has no vested right in statutory provision requiring that changes in property tax assessments be approved by voters). *See generally* 71 Am.Jur.2d *State and Local Taxation* § 128 (1973).

While it has generally been held that tax assessments may not be altered for tax years that have already closed, *see, e.g., Lakengren v. Kosydar*, 44 Ohio St.2d 199, 339 N.E.2d 814 (1975); *In re Armistead*, 362 Mo. 960, 245 S.W.2d 145 (1952), the majority of state courts that have tested tax provisions which apply prior to their date of enactment against specific state constitutional prohibitions similar to article II, section 11, have held that tax amendments may impose changes effective during the year of enactment. *See Atlas Crankshaft Corp. v. Lindley*, 58 Ohio St.2d 299, 389 N.E.2d 1139 (1979) (upholding increase in state franchise tax obligation effective during portion of taxpayer's accounting year that had already passed); *Hanson v. Town of Flower Mound*, 539 S.W.2d 178 (Tex.Civ.App.1976) (municipal tax enacted in November 1974 may be levied against property located within the city as of January 1, 1974 without violating state constitutional prohibition against retrospective legislation); *Estate of Kennett v. State*, 115 N.H. 50, 333 A.2d 452, 455 (1975) (provision passed in April 1970 taxing business profits earned since January 1, 1970 does not violate state

---

5. The court further held that even if the board was not authorized to resort to this mode to ascertain the average number of cars used during the months preceding the date on which the act took effect, the taxpayers were required by statute to offer to pay the taxes upon the average number of cars ascertained to have been employed during the remainder of the year to entitle them to the relief sought. 28 Colo. at 124, 63 P. at 412.

constitution's specific prohibition against retrospective legislation); *Roberts v. Gunter*, 251 Ga. 276, 304 S.E.2d 369 (1983) (tax statute enacted during calendar year does not violate state constitutional provision prohibiting retroactive legislation when it relates back so as to tax for that entire year); *Biltmore Hotel Court v. City of Berry Hill*, 216 Tenn. 62, 390 S.W.2d 223 (1965) (taxing statutes are generally held to be constitutional even though they may have some retroactive effect). *But see First National Bank of St. Joseph v. Buchanan County*, 205 S.W.2d 726 (Mo.1947) (statute levying an annual tax on banks based on net income could not operate retrospectively on income received before date of enactment).

We also note that the impairment of vested rights standard adopted in *Denver, South Park & Pacific Railway* is substantially similar to the standard used to test the constitutionality of retroactive tax provisions in states without specific constitutional prohibitions. *See, e.g., Colonial Pipeline Co. v. Commonwealth*, 206 Va. 517, 145 S.E.2d 227 (1965) (upholding retroactive application to January 1 of a tax statute enacted in March), *appeal dismissed*, 384 U.S. 268, 86 S.Ct. 1476, 16 L.Ed.2d 523 (1966), where the Supreme Court of Appeals of Virginia stated that

> It is well settled that the mere retroactivity of a statute affecting taxation does not render it unconstitutional. Such a statute is valid if it is not arbitrary and *does not disturb vested rights*, impair contractual obligations, or violate due process.

145 S.E.2d at 231 (emphasis added). *See also Belco Petroleum v. State Board of Equalization*, 587 P.2d 204, 212 (Wyo. 1978) (finding no impairment of vested rights in upholding constitutionality of amendment to severance tax statute); *American States Water Service Co. v. Johnson*, 31 Cal.App.2d 606, 88 P.2d 770, 774 (1939) (upholding franchise tax computation relating back to January 1 of year of enactment); *Fullerton Oil Co. v. Johnson*, 2 Cal.2d 162, 39 P.2d 796 (1934) (citing *American Refrigerator Transit* in holding

that amendment to franchise tax statute effective for entire year of enactment did not impair taxpayer's vested rights); *Hansman v. Bernallilo County Assessor*, 95 N.M. 697, 625 P.2d 1214 (N.M.App.1980) (taxpayer does not have a vested right in property tax rate for a previous year, even though the change in the tax rate is enacted in the current year). Since states without specific constitutional prohibitions against retrospective legislation have often applied a vested rights analysis, decisions in those jurisdictions are not without weight here. While decisions in the federal courts have not been based on a specific constitutional prohibition, we also find federal case analysis persuasive on the issue of whether retroactive tax provisions impair the taxpayer's vested rights.

In *Cohan v. Commissioner*, 39 F.2d 540, 545 (2d Cir.1930), the issue was whether a federal income tax amendment enacted in November 1921 was applicable to the first six months of 1921. In resolving that question, Judge Learned Hand stated:

> Nobody has a vested right in the rate of taxation, which may be retroactively changed at the will of Congress at least for periods of less than twelve months; Congress has done so from the outset.... The injustice is no greater than if a man chance to make a profitable sale in the months before the general rates are retroactively changed. Such a one may indeed complain that, could he have foreseen the increase, he would have kept the transaction unliquidated, but it will not avail him; he must be prepared for such possibilities, the system being already in operation. His is a different case from that of one who, when he takes action, has no reason to suppose that any transactions of the sort will be taxed at all.

The vitality of this analysis was recently reaffirmed when the United States Supreme Court, in a *per curiam* opinion, relied on the passage above in upholding the constitutionality of a retroactive increase in the federal minimum tax. *United States v.*

*Darusmont*, 449 U.S. 292, 298, 101 S.Ct. 549, 552–53, 66 L.Ed.2d 573 (1981).

■ The Court explained the underlying rationale for finding that the taxpayer has no vested right in a rate or method of taxation in *Welch v. Henry*, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938) (upholding the retroactive application of a Wisconsin income tax statute):

> Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe on due process, and to challenge the present tax it is not enough to point out that the taxable event ... antedated the statute.

305 U.S. at 146–47, 59 S.Ct. at 125–26. The Court in *Welch* also specifically noted that property taxes, like taxes on income, may be retroactively applied. 305 U.S. at 147, 59 S.Ct. at 125–26. The test of constitutionality set forth in *Welch* is to consider the nature of the tax and the circumstances in which it is laid. Under fifth amendment due process analysis, retroactive operation is constitutional where it is not harsh, arbitrary or unfair. *Id.*

While we must enforce a more specific prohibition than that found in the Due Process Clause, we agree with the analysis set forth in *Welch* and *Cohan*, and find that taxpayers have no vested right in the factors used to determine the actual value of assessed property. Tax provisions, as key components in a system designed to fairly apportion the costs of government, seldom remain static. Rather, we expect them to change in response to changing conditions. Where, as here, a list of factors that a tax assessor may consider is designed to help the assessor determine actual value, taxpayers have ample reason to believe that a statutory provision such as section 39–1–104(11)(b), 16B C.R.S., might be modified to reflect novel situations that change the actual value of assessed property.

■ Here, section 39–1–105 establishes a date as of which property must be assessed each taxable year, January 1, but it does not provide that the method of valuation used that year must also be the one existing on that date.[6] As discussed above, a change in the method of valuation during the year for which the assessment was made does not constitute retrospective legislation. Taxpayers had no reason to believe that the factors considered in assessing rental property would not be modified so as to include the impact of condominium conversions, and therefore had no vested right in the previous method of determining value. Nor is H.B. 1236 "harsh, arbitrary or unfair." *Welch*, 305 U.S. at 147, 59 S.Ct. at 125–26. It merely authorized the assessor to take into account as an unusual condition the creation of condominium ownership in determining actual value. Since the property owners had no vested right in the assessor not considering this factor, we find no violation of the constitutional proscription against retrospective legislation.

■ Moreover, the property owners have not met their burden of proving the unconstitutionality of H.B. 1236 beyond a reasonable doubt. The only Colorado authority they have cited in support of their retrospective argument involves legislation

---

**6.** We reject the taxpayers' further argument that *Denver v. Board of Directors of Castlewood Fire Protection District*, 37 Colo.App. 496, 549 P.2d 1090 (1976), stands for the proposition that section 39–1–105, 16B C.R.S. (1973), vests in all taxpayers the value of their properties for the taxable year on January 1 of each year. There, the court of appeals held that Castlewood's lien for 1974 taxes attached to all taxable property in the district on January 1, 1974, the official assessment date for 1974 taxes. *See* §§ 39–1–105, –107, 16B C.R.S. (1973). However, this does not mean that a taxpayer's right to a particular assessment vests on this date. Furthermore, a lien does not become effective nor is its value known until the property is assessed and the taxes levied, at which time the theretofore inchoate lien relates back and attaches as of the date authorized for assessment. *Wolf v. Antonoff*, 161 Colo. 473, 423 P.2d 840 (1967).

which affected vested rights. *See Denver v. Denver Buick, Inc.,* 141 Colo. 121, 347 P.2d 919 (1959) (property rights); *Denver, South Park & Pacific Railway Co. v. Woodward,* 4 Colo. 162 (1878) (accrued right of action under early survival statute).

Accordingly, the judgment of the district court is reversed.